MOTOROLA INC., a Delaware corporation, Defendant Below–Appellant,

v.

AMKOR TECHNOLOGY, INC. a Delaware corporation, Plaintiff Below–Appellee.

No. 634, 2007.

Supreme Court of Delaware.

Submitted: Sept. 17, 2008.
Decided: Oct. 8, 2008.

Jeffery L. Moyer, Esquire, of Richards, Layton and Finger, P.A., Wilmington, DE and J. Timothy Eaton, Esquire, of Shefsky and Froelich, Ltd., Chicago IL, for Appellant.

Daniel V. Folt, Esquire and Matt Neiderman of Duane Morris, LLP, Wilmington, DE and Patrick J. Loftus, Esquire, Philadelphia, PA, for Appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

RIDGELY, Justice:

Motorola, Inc. ("Motorola") appeals the order of judgment in favor of Amkor Technology, Inc. ("Amkor") following a bench trial in Superior Court. Motorola argues that the trial court erred 1) by not judicially estopping Amkor from changing its argument concerning the relationship of two clauses of a Patent License Agreement ("PLA"); 2) by not entering judgment as a matter of law based on the alleged change in Amkor's position; and 3) by making factual findings not supported by the record. We find no merit in Motorola's appeal and affirm.

### Facts and Procedural Background

Amkor and Motorola are Delaware corporations that at all relevant times were in the business of, among other things, developing and producing ball grid array packages ("BGA"), which are used to house integrated circuits in the manufacture of semiconductor products. Citizen Watch Co. Ltd. ("Citizen") is a related third party to this litigation that is also in the business of manufacturing BGA packages. This dispute revolves around the relationship of these companies.

Motorola and Citizen have a business relationship dating back to the late 1980's in which Citizen performed essentially all of Motorola's microprocessor assembly and developed new technology relating to microprocessors. Motorola and Citizen also shared confidential information, while at the same time, retaining their rights to individual research. Citizen asserted that at some time Motorola filed applications to the U.S. Patent Office without providing notice or consulting with Citizen. Two patents—the Mullin patent and the Lin patent—were issued to Motorola as a re-

sult of these efforts.[1] Citizen's ability to license or assign these two patents is central to this litigation.

On June 30, 1993, Amkor and Motorola entered into an Immunity Agreement. This agreement provided that both parties were given access to each other's patents and that Amkor was to pay Motorola for use of Motorola's patents.[2] By its own terms, the Immunity Agreement was to expire on December 31, 2002.

Motorola later demanded that Citizen purchase a royalty-bearing license in order to continue to use the technology covered in the Lin and Mullin Patents. Citizen refused to purchase such a license, believing that the patent could be invalidated as it was co-developed by Citizen. Citizen and Motorola sought to avoid litigation and negotiations to resolve this dispute commenced. A lengthy negotiation ensued and the parties agreed to a Patent License Agreement ("PLA") on January 25, 1996. The PLA was recorded pursuant to its own Section 4.2 and Section 261 of the U.S. Patent and Trademark Act.[3] The PLA granted to Citizen the same patents that were granted to Amkor under the Immunity Agreement; however, Citizen received other benefits of this contract beyond the Amkor deal. Citizen and Motorola cross-licensed their patents royalty-free, and in addition, Citizen was given a one-half undivided interest to the Mullin and Lin patents.

The PLA contained restrictions curtailing Citizen's ability to transfer the rights and privileges conveyed under the PLA to third parties. The two provisions central to this litigation are Sections 4.1 and 5.5. Section 4.1 states:

CITIZEN agrees not to offer to enter into or to enter into a contract with current BGA licenses of MOTOROLA, including those listed in Appendix A, [containing *inter alia*, Amkor] for a license to make, have made, or sell BGAs under U.S. Patent Nos. 5,241,133 [Mullin Patent] and 5,216,278 [Lin Patent].

Section 5.5 states:

The rights or privileges provided for in this Agreement may be assigned or transferred by either party only with the prior written consent of the other party ... except as to a successor in ownership of all or substantially all of the assets of the assigning party relating to the business unity employing the patents licensed hereunder.

On March 28, 2002, Amkor purchased substantially all of the assets of Citizen's BGA assembly unit. At the same time, Citizen and Amkor entered into an Intellectual Property Assignment Agreement whereby Citizen assigned its one-half interest in the Mullin and Lin patents to Amkor. The agreement required Citizen to obtain consent to the assignments from relevant entities except Motorola.

Amkor notified Motorola of its purported interest and Motorola replied, stating that both Citizen and Amkor were in breach of contract and the transfer was invalid under Section 4.1 of the PLA. Nonetheless, Amkor ceased paying royalties to Motorola after the first quarter of 2002.

Amkor filed an action in Superior Court seeking a declaration that Citizen's transfer of the Mullin and Lin patents was valid

---

1. The applications were granted as Patent No. 5,241,133 ("Mullin Patent") and No. 5,216,-278 ("Lin Patent") on August 31, 1993 and June 1, 1993, respectively.

2. Amkor paid Motorola $36.2 million dollars in royalties pursuant to the Immunity Agreement.

3. 35 U.S.C. § 261 (2001).

and that it was not required to pay Motorola any royalties.[4] Both parties moved for summary judgment. In denying Motorola's motion and granting summary judgment in favor of Amkor, the trial court stated, "A 'license' and an 'assignment' are distinct and separate as used in [Section] 4.1 and [Section] 5.5, involving different obligations and responsibilities."[5]

Following summary judgment, Motorola appealed to this Court. We reversed and remanded, finding the contract to be ambiguous and that material issues of fact precluded summary judgment.[6] On remand, the Superior Court held a six-day bench trial, which included testimony relating to the respective intentions of Citizen and Motorola when they drafted the PLA.[7] Motorola once again raised the argument that if (a) the term "license" is subsumed in the term "assignment", then (b) by operation any assignment must also grant a license, and therefore, (c) this operation invalidates the assignment to Amkor under Section 4.1. Amkor, on the other hand, argued that a license and an assignment are not the same, and, there-fore, that the assignment was permissible under Section 5.5. Amkor also argued that to construe the PLA differently would negate Citizen's assertion that it was entitled to more than just a right to use Motorola's patents. A mere license to the patents would have been insufficient for Citizen to relinquish its claim to ownership of the patents.[8]

In its Findings of Fact and Conclusions of Law, the Superior Court determined that "it was and remains readily apparent that there was no evidence, parol or otherwise, that either side discussed the relationship, if any, between [Section] 4.1 and [Section] 5.5 of the PLA." Furthermore, the court determined that during the PLA negotiations Motorola had the following objectives: (i) to secure the markets for manufacturing and assembling Section 4.1 semiconductors and (ii) to eliminate any challenge from Citizen to the ownership of the Mullin and Lin Patents. In contrast, Citizen was determined to seek unrestricted use and/or ownership of the patents in question.[9]

4. Motorola filed a counterclaim for breach of the immunity agreement which was resolved on June 24, 2003 when Motorola and Amkor filed a "Stipulation and Order Dismissing Certain Claims." The trial court did not indicate Motorola's rationale for dismissing this claim.

5. *Amkor Tech., Inc., v. Motorola, Inc.,* No. 02C–08–160, at *14–15 (Del.Super. Oct. 6, 2003). Using Illinois law, the court found the PLA unambiguous and applied the "plain meaning" rule. It then found that Section 4.1 applied only to licenses, while Section 5.5 applied only to assignments. The court later addressed the PLA's effect on assignments to a successor and found: "[i]f the PLA is assigned to a successor who acquires 'all or substantially all of the assets' of Citizen, then the only requirement is that the successor expressly assume in the writing the terms of the PLA to the other party." *Id.*

6. *Motorola, Inc. v. Amkor Tech., Inc.,* 849 A.2d 931 (Del.2004). We noted that "[w]here more than one plausible construction of a contract exists or the contract is ambiguous because two or more key provisions conflict, an issue of material fact arises and summary judgment must be denied." *Id.* (citing Illinois law).

7. Various parties to negotiations testified, including negotiators, accountants and IP attorneys.

8. *Amkor Tech., Inc. v. Motorola, Inc.,* 2007 WL 3360039, at *5 (Del.Super. Nov. 14, 2007).

9. *Id.* The court also made specific reference to the fact that both Motorola and Citizen were experienced participates in the semiconductor market and at all times were represented by experienced and/or competent legal and non-legal advisors. *Id.* at *9

After considering evidence, the Superior Court found that "license" and "assignment" were terms of art in intellectual property contracts: a "license" refers to the ability to use something, while an "assignment" deals with the conveyance of ownership of intellectual property rights. The court found that the assignment by Citizen to Amkor was not a license and therefore not covered by Section 4.1 and if Motorola had a contrary view of the definition of a "license" and an "assignment" it never shared that view with Citizen during the PLA negotiations. The Superior Court noted that at all relevant times, both parties were counseled by competent and experienced professionals, the negotiation process was protracted, and Motorola had multiple opportunities to raise its contrary interpretation of industry terms to Citizen, yet it chose not to do so.

Consistent with the Restatement (Second) of Contracts, § 201(2)(b),[10] the Superior Court looked to trade usage as a source of resolving the contract ambiguity.[11] It stated:

> [W]here the parties to a contract are aware that trade usage or local custom attaches meanings to certain words or phrases, a party's reliance thereon will be upheld where: (1) the opposing party had a contrary view but failed to communicate it to the former; and (2) the first party was unaware that opposing party held a view contrary to the trade usage or local custom.[12]

The Superior Court further found Section 5.5 of the PLA to be controlling and on this basis stated that neither Amkor nor Citizen violated the PLA. Thus Amkor correctly relied on the definitions of the two words in question as it knew them throughout the industry. The trial court noted that under this interpretation, Motorola's goals were met as it successfully removed any threat to its ownership of the Mullin and Lin Patents and avoided costly litigation. Accordingly, the Superior Court ruled that Amkor was entitled to judgment and stated that it did not violate the PLA when it was assigned the patents from Citizen.

Motorola appealed the decision to this Court, and after oral arguments we again remanded to Superior Court because of its incorrect observation that Motorola failed to call three other witnesses and its drawing of a negative inference from their absence at trial.[13] We found that their testimony was preserved by deposition and admitted into evidence. We remanded with instructions to consider this overlooked evidence.[14] On remand, the Superior Court stated that the evidence of these three witnesses, when taken as a whole, did not alter its opinion or judgment in the case.[15] It found that there was no discussion between Motorola and Citizen con-

10. RESTATEMENT (SECOND) OF CONTRACTS § 201(2)(b) (1979).

11. Trade and local usage is defined by the UCC as "any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question." Uniform Commercial Code § 1–205(3).

12. *Amkor*, 2007 WL 3360039, at *7 (citing MARGARET N. KNIFFIN, CORBIN ON CONTRACTS § 24:5 (rev. ed. 1998)).

13. The other witness participated in the negotiations between Motorola and Citizen. They were Vince Ingrassia, Jim Smith, and Don Walker.

14. *Motorola, Inc. v. Amkor Tech. Inc.*, No. 634, 2007 (Del. May 19, 2008).

15. *Amkor Tech., Inc. v. Motorola, Inc.*, No. 02C–08–160, at *4–5 (Del.Super. Jul. 23, 2008) (Response to order of Remand).

cerning Sections 4.1 and 5.5 and the three individuals did not meet face to face with Citizen when negotiating the PLA.

### The Judicial Estoppel Claim

■ Motorola claims that Amkor's changed its position concerning the interrelationship between Sections 4.1 and 5.5 of the PLA, and that this switch entitles Motorola to judgment in its favor. Motorola contends that Amkor previously argued that Section 5.5 of the PLA operated as an exception to Section 4.1, but then, during his closing statement, Amkor's attorney abandoned this argument, stating that Section 5.5 is not related to Section 4.1, but is instead related to Sections 3.1 and 3.2.[16] Motorola claims that the earlier argument was also made before this Court during the first appeal. As a result of this change in position, Motorola suggests that Amkor should be estopped from arguing that Section 5.5 operates as an exception to the alleged anti-assignment provision of 4.1. Since Amkor would then be without an exception to this provision, Motorola argues it is entitled to summary judgment.[17]

■ The determination of judicial estoppel is a question of law and is reviewed *de novo*.[18] To the extent that the trial court's interpretation of the contract rests upon findings extrinsic to the contract we defer to the trial court's findings, unless those findings are not supported by the record or unless the inferences drawn from those findings are not the product of an orderly or logical deductive reasoning process.[19] All other questions concerning contract interpretation are questions of law and are reviewed *de novo*.[20]

■ Motorola's argument, while novel, is flawed. Judicial estoppel acts to preclude a party from asserting a position inconsistent with a position previously taken in the same or earlier legal proceeding. The doctrine is meant to protect the integrity of the judicial proceedings.[21] The primary determination made by the court turns on whether a party is attempting to "establish an inconsistent or different cause of action arising out of the same occurrence."[22] However, judicial estoppel also prevents a litigant from advancing an argument that contradicts a position previously taken that the court was persuaded to accept as the basis for its ruling.[23] The doctrine is not appropriate in all situations; parties raise many issues throughout a lengthy litigation such as this, and only those arguments that persuade the court can form the basis for judicial estoppel. "[J]udicial estoppel operates only where the litigant's contradicts another position

---

16. Motorola also states that similar admissions were made concerning Sections 4.1 and 5.5's relationship in Amkor's reply brief for it motion for summary judgment, its answering brief for the first appeal to this Court, and oral argument before this Court.

17. Motorola states Section 4.1 is an "anti-assignment provision"; however, the trial court and Amkor have disagreed at every opportunity and declared it to be a bar from licensing or sub-licensing.

18. *B.F. Rich & Co. v. Gray*, 933 A.2d 1231, 1241 (Del.2007); *State v. Chao*, 2006 WL 2788180, at *1 (Del.Super. Sep. 25, 2006).

19. *AT&T Corp. v. Lillis*, 953 A.2d 241, 251 (Del.2008).

20. *Id.*

21. *Chao*, 2006 WL 2788180 at *9. (citing *Pesta v. Warren*, 2004 WL 1282214, at *1 (Del.Super. May 27, 2004)).

22. *Chao*, 2006 WL 2788180 at *9 (citing *Kesterson v. Am. Cas. Co.*, 1988 WL 90497, at *3 (Del.Super. Aug. 15, 1988)).

23. *Siegman v. Palomar Med. Techs., Inc.*, 1998 WL 409352, at *3 (Del.Ch. Jul. 13, 1998).

that the litigant previously took *and* that the Court was successfully induced to adopt in a judicial ruling."[24]

Motorola fails to meet this last requirement that a court was persuaded by its opponent's first argument.[25] The Superior Court was clear that its decision rested on the difference between "assignment" and "license." On remand, the court considered additional evidence and found the same rationale compelling and again found for Amkor. It based neither its summary judgment, nor its judgment after trial on the position that an exception to Section 4.1 was found in Section 5.5 and operated to make Citizen's transfer valid. Rather, the Superior Court considered the difference between license and assignment and stated, "[t]hey concern separate and distinct obligations and/or responsibilities, notwithstanding the divergent view of the party in that regard."[26] The Superior Court recognized:

> '[L]icense' and 'assignment' have separate and distinct meanings, *i.e.*, the right to use the Mullin and Lin patents versus an ownership interest in them. Section 4.1 as a result prohibits Citizen from entering into licensing relationships with the entities referenced.... No such restriction was carried over into or subsumed within [Section] 5.5 which allowed Citizen to divest itself, by way of assignment, of the ownership interest it acquired.[27]

Moreover, even if judicial estoppel was available, it would not estop Amkor on the

facts of this case. Under Motorola's analysis, if judicial estoppel was appropriate, then Amkor would be prohibited from arguing that Section 5.5 is related to Sections 3.1 and 3.2; however, Amkor would not be estopped from arguing Section 5.5 operates as an exception to Section 4.1. Motorola is trying to benefit by choosing to disallow only the portion of Amkor's argument it disagrees with most. This it cannot do.

### The Law of the Case Claim

 Motorola next argues that the "law of the case" doctrine prohibits Amkor from changing its argument before the Superior Court after remand. This doctrine states "when an appellate court remands a case for further proceedings, the trial court must proceed in accordance with the mandate and the law of the case established on appeal."[28] "The trial court is required to implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces."[29] However, though trial court is required to make a determination consistent with the appellate court's review, it is also "free to make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court not settled by the decision."[30] "The law of the case doctrine, however, is not inflexible in that, unlike *res judicata*, it is not an absolute bar to a prior decision that is clearly wrong, pro-

24. *Id.* at *3 (emphasis in original).

25. Although the Superior Court stated in its earlier grant of summary judgment that it understood Amkor's position to be that Section 5.5 was an exception to Section 4. 1, that was not the reason for the grant of summary judgment.

26. *Amkor Tech., Inc. v. Motorola, Inc.,* No. 02C–08–160, at *15 (Del.Super. Oct. 6, 2003).

27. *Amkor,* 2007 WL 3360039, at *10.

28. *Ins. Corp. of Am. v. Barker,* 628 A.2d 38, 40 (Del.1993).

29. *Id.*

30. *Id.* at 41.

duces an unjust result or should be revisited because of changed circumstances."[31]

Motorola argues the Superior Court failed to abide by the instructions of this Court on remand. Motorola contends that we ruled that Amkor argued the bar/exception dynamic as previously stated concerning Sections 4.1 and 5.5; and, therefore, Amkor should not be permitted under the "law of the case" from changing that argument. However, we reversed because we did not agree with the Superior Court's finding that the contract was unambiguous and material issues of fact precluded summary judgment.[32]

Our mandate required the Superior Court to examine the parties' intention and take into consideration appropriate extrinsic evidence.[33] The Superior Court followed our mandate, it considered the extrinsic evidence it was ordered to consider and made its finding accordingly. The "law of the case doctrine" does not render any of the Superior Court's findings erroneous.

### The Erroneous Findings Claim

Motorola claims that the Superior Court made erroneous findings following the bench trial. Motorola raises three exceptions to the court's findings: first, that it failed to consider the evidence of the missing witnesses; second, the parties' intent should be governed by the Restatement's rule that more specific provisions should control when interpreting a contract; and

third the trial court did not have an adequate basis in the record to determine the parties' intent in the matter it did.

■■■■■■ In an appeal from a Superior Court judgment in a non-jury case we review the trial court's findings to ensure they are the result of a logical and orderly deductive reasoning process.[34] "This Court is free to make contradictory findings of fact only when the original findings are clearly wrong and justice requires their overturn."[35] All other questions concerning contract interpretation are questions of law and are reviewed de novo.[36]

■■■■ Motorola persuaded us during its last appeal that the Superior Court overlooked certain testimony and we remanded with instructions to the Superior Court to consider the testimony previously ignored.[37] The trial court then found that, "[t]he deposition testimony of Mssrs. Smith, Ingrassia and Walker does not reflect that either Citizen or Motorola discussed whether there was any link between Section 4.1 and Section 5.5. of the Patent License Agreement ... the three individuals did not actively participate in the face to face negotiations with the representatives of Citizen culminating in the execution of the PLA ... the deposition testimony of [the three witnesses] does not provide any assistance to the Court in resolving any of the issues before it prior to the issuance of its November 14, 2007 decision"[38] The Superior Court reaffirmed

31. Cede & Co. v. Technicolor, Inc., 884 A.2d 26, 39 (Del.2005).

32. Motorola, 849 A.2d at 938.

33. Id. at 938–39.

34. Carello v. State, 860 A.2d 809, 2004 WL 2520905 at *1 (Del.2004) (table); Ingram v. Heiman, Aber & Goldlust, 748 A.2d 913, 2000 WL 368295 at *1 (Del.2000) (table);

35. Carello 860 A.2d 809, 2004 WL 2520905 at *1.

36. Id.

37. Motorola, Inc. v. Amkor Tech., Inc., No. 634,2007 (Del. May 19, 2008). The witnesses were Messrs. Ingrassia, Smith and Walker.

38. Id. at *5–6.

its prior decision.[39]

Evidence in the record allowed the Superior Court to discount the involvement of Ingrassia, Smith and Walker. Ingrassia testified that he only attended one meeting, and that was likely all. He further stated, "I attended a meeting, I couldn't begin to tell you when that was—in which Citizen gave a presentation regarding their involvement in developing the technology that was the subject of certain patents. That's all I remember." He also did not recall having any other involvement in the negotiation process after that meeting.

Smith did not participate in the negotiations between Citizen and Motorola. He also was not sure if Motorola entitled Citizen to sell its BGA business units. Also, Smith was aware that protecting revenue streams was a clear objective of Motorola and he knew that the anti-assignment provision may allow Citizen to assign its rights, yet he did not raise this issue to anyone, because it was not his job. Walker testified that he had almost no involvement at all with the drafting or negotiating of the PLA, and that his involvement was exclusively through Motorola's patent attorney. The trial court's decision on the weight of the deposition testimony is supported by record and is not clearly erroneous.

■ Motorola next contends that "[a]lthough the trial court relied upon the Re-statement (Second) of Contracts ... it failed to even consider other provisions of the Restatement that more accurately gauge the parties' intent." The Restatement provision to which Motorola refers is actually Section 236 of the First Restatement.[40] This section does support Motorola's contention that more specific clauses should be given greater weight then the general, but it is a secondary rule and applies only after the application of Sections 230 and 233.[41] Section 233(b) addresses the issue in this case; it provides:

> Where a party manifests his intention ambiguously, knowing or having reason to know that the manifestation may reasonably bear more than one meaning, and the other party believes it to bear one of those meanings, having no reason to know that it may bear another that meaning is given to it.[42]

Based upon the factual findings of the trial court, Motorola's understanding of the meaning of the words 'license' and 'assignment' were never conveyed to Citizen; therefore Citizen relied upon the trade usage of those terms. Thus, according to Section 233(b), Citizen's meaning controls. Finding one of the primary Restatement rules to control, there is no need to address Section 236.[43]

■ Motorola's argument that a specific provision generally trumps a general provision is found in Illinois law;[44] but,

---

**39.** *Id.* at *6.

**40.** Motorola incorrectly cites the Restatement (Second) of Contracts Section 236(c). The proper citation is to the Restatement (First). Restatement (First) Section 236 has been re-numbered to Section 203 in the Second Restatement. The two sections are not identical.

**41.** RESTATEMENT (FIRST) OF CONTRACTS § 236 (1932).

**42.** RESTATEMENT (FIRST) OF CONTRACTS § 233(b) (1932).

**43.** *See* RESTATEMENT (FIRST) OF CONTRACTS § 236 cmt. a. (1932). § 236 is a secondary rule of interpretation, meaning it only applies if a primary rule fails to resolve the issue. However, § 233 is a primary rule of construction; if it satisfies the inquiry, secondary rules are inapplicable.

**44.** In this appeal, Illinois law governs contract interpretation. *See Motorola*, 849 A.2d at 936.

there is also a requirement that the two provisions concern the same subject.[45] Here, the provisions concern different subjects. The Superior Court concluded that Sections 4.1 and 5.5 do not control the same action. Because a "license" and an "assignment" have different meanings, Amkor's assignment was permissible.[46] The Superior Court did not err in that finding.

 Finally, Motorola contends that the Superior Court did not consider sufficient facts to support its finding that intentions of Motorola were to:

> [R]emove any threat to the continued viability of the Mullin and Lin Patents, along with the expenses that might be associated therewith, secure the emerging markets to be serviced by the technology covered by those patents and avoid any reduction in income that might result from competitions with Citizen.[47]

At issue is whether the trial court had a basis in the record to find that this was the actual intent. The contract gave Citizen the right to Motorola's patents royalty free. This was from an apparent amicable business relationship that existed between Motorola and Citizen. Citizen was preparing for litigation to invalidate the Mullin and Lin Patents. There is evidence in the record that supports an inference that Motorola favored resolving the dispute by agreement and offered ownership of the Mullin and Lin Patents as early as March 21, 1995 in an attempt to avoid patent litigation. This was due to the "mutually beneficial relationship that exists between Motorola and Citizen."[48] There was sufficient evidence to support the findings of fact in this case. The Superior Court's findings were not clearly wrong and justice does not require their overturn.

### Conclusion

The judgment of the Superior Court is **AFFIRMED.**

**45.** *See Henderson v. Roadway Express*, 308 Ill.App.3d 546, 242 Ill.Dec. 153, 720 N.E.2d 1108, 1111 (1999) (holding when both general and specific contract clauses concern the same subject, the specific clause controls).

**46.** *Amkor Tech., Inc. v. Motorola, Inc.*, No. 02C–08–160, at *4–5 (Del.Super. Jul. 23, 2008); *Amkor*, 2007 WL 3360039, at *10; *Amkor*, No. 02C–08–160, at *14–15 (Del.Super. Oct. 6, 2003)

**47.** *Amkor Tech.*, 2007 WL 3360039, at *9 (Del.Super. Nov. 14, 2007).

**48.** Letter from James L. Clingan, Jr., Division Patent Counsel, Motorola, Inc. to Stuart Lubitz, Esq., Spendsly, Horn, Jubas & Lubitz. (Mar. 21, 1995).