Antoinette A. CHILSON, Defendant
Below–Appellant,

v.

ALLSTATE INSURANCE COMPANY,
an Illinois corporation, Plaintiff
Below–Appellee.

No. 605, 2008.

Supreme Court of Delaware.

Submitted: May 13, 2009.
Decided: Aug. 11, 2009.
Reargument Denied Sept. 1, 2009.

Bernard A. Van Ogtrop, Esquire (argued) and Jared T. Green, Esquire, of Seitz Van Ogtrop & Green, P.A., Wilmington, DE, for appellant.

Michael A. Pedicone, Esquire (argued), Wilmington, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice:

Plaintiff–Appellant Antoinette A. Chilson appeals from the Superior Court's grant of a new trial in her lawsuit against her insurer, Defendant–Appellee Allstate Insurance Company ("Allstate"), for underinsured motorist benefits arising out of an automobile accident with Joseph W. Lloyd, Sr. This case has been tried twice. At the first trial, held before a jury, the jury found in Chilson's favor and awarded $2 million in damages. Following the grant of a new trial, the parties waived trial by jury. At the second trial, held before a Superior Court judge, judgment

was entered in favor of Allstate. Chilson makes two arguments on appeal. First, she contends that the court abused its discretion in the first trial by granting a new trial on the issues of liability *and* damages, because the issue of liability had been properly and definitively determined by the jury. Second, she contends that the court's findings of fact and conclusions of law in the second trial were clearly erroneous and that justice requires that they be overturned. We find no merit to Chilson's arguments and affirm.

## I. Facts and Procedural History[1]

On February 10, 2003, Chilson was involved in two automobile accidents, both taking place on Lorewood Grove Drive in Middletown, Delaware. The first accident occurred at approximately 8:30 p.m. when Chilson was driving her car on the two-lane country road she described as "pretty hilly and curvy." Chilson testified that it was "really cold outside," and that her car slid on ice, ran off the road, struck a tree, and then became stuck in a snow bank. As a result of the impact, the airbag in the car deployed and Chilson testified that, after the accident, she felt "tingling on the right side of [her] face and on [her] right inner arm near [her] shoulder." Chilson called her husband, who quickly arrived with his pick-up truck, and was able to tow his wife's car out of the snow bank. Because the car was still operable and Chilson felt comfortable driving, the Chilsons decided that they would drive the vehicles to their nearby home. They made it safely back to their home, but soon decided that Chilson should go to the hospital.

The second accident occurred at approximately 9:00 p.m., while Chilson's husband was driving her to the hospital in his truck.

1. The facts are summarized from the Superior Court's Opinion. *Chilson v. Allstate Ins. Co.,* 2007 WL 4576006, at * 1–3 (Del.Super.Dec. 7, 2007) [hereinafter *Order Granting New Trial*].

As the Chilsons neared a curve in the road, a pick-up truck driven by Joseph W. Lloyd, Sr. approached from the opposite direction. Lloyd's truck slid on "black ice" [2] and struck the Chilsons' truck head-on. In his deposition, Lloyd testified that as he "slowed down to make the turn, [he] hit the gas again, [and] that's when [he] started sliding." Lloyd testified that there had been a "mist" that night, but that he was unaware of any black ice until he got out of his truck immediately after the accident and realized that the road was covered with black ice. That fact was corroborated by Corporal Erik Lochstoer, the Delaware State Trooper investigating the accident. Lloyd testified that he had hit this black ice while going around the curve, crossed the middle line, and fishtailed into the Chilsons' truck. The collision caused the Chilsons' truck to run off the road and hit a tree. The truck was "totaled" in the accident and Chilson was taken to the hospital in an ambulance.[3]

Immediately after the second accident, Chilson complained of right shoulder, right hip, and right knee pain, as well as chest, neck, and back pain. When she arrived in the emergency room, medical staff performed a "Glasgow Coma Scale," a test designed to determine whether she had a concussion. The test returned a "normal score," indicating that she did not have a concussion. However, an MRI of Chilson's neck showed a "minute central protrusion" of one of her disks. Chilson later complained to her neurologist, Dr. Alan Fink, of neck and back pain that "waxed and waned," and also of a greater frequency and severity of the migraine headaches she had suffered before the accidents. As

a result, Chilson made a claim for compensation against Lloyd's insurance carrier, Dairyland Insurance Company, for the injuries she suffered in the second accident. That claim was resolved upon Dairyland's payment of $15,000, the policy coverage limit available to Lloyd.

At the time of the accident, Chilson had an insurance policy with Allstate, which included underinsured motorist coverage for up to $100,000. After the settlement with Lloyd's insurance carrier, Chilson presented an uninsured motorist claim to Allstate, claiming that the $15,000 paid by Lloyd's insurance carrier was inadequate to compensate her for her damages. Allstate rejected the claim. In December 2004, Chilson filed a suit against Allstate seeking payment of the underinsured motorist claim in an amount sufficient to compensate her for her damages, together with interest and costs.

A two day trial began on May 29, 2007. At the close of Chilson's case, Allstate moved for judgment as a matter of law as to liability, asserting that Lloyd had not been negligent because he was unaware of the black ice, and that there had been otherwise no negligent conduct on his part. In opposition, Chilson noted that it was a cold February night and that it had rained earlier that day. She asserted that weather conditions should have put Lloyd on notice that the roads were likely to be icy that night. As additional evidence of his negligence, Chilson pointed to Lloyd's testimony that he "hit the gas again" as he rounded the curve. In considering Allstate's motion for judgment as a matter of law, the trial court was required to view the evidence in the light most favorable to

---

**2.** "Black ice" is a "thin, nearly invisible coating of ice that forms on paved surfaces." WEBSTER'S II NEW COLLEGE DICTIONARY 115 (3d ed. 2001).

**3.** Mr. Chilson apparently suffered no physical injuries as a result of the accident. He originally filed a claim for loss of consortium, but abandoned it before the case was submitted to the jury.

the plaintiff.[4] The trial court denied All-state's motion, stating that, while there was "not the strongest amount of evidence in the world of negligence in this case," the negligence issue nevertheless was for the jury to determine.

The case was submitted to the jury with special interrogatories which isolated the issues of liability and damages. The jury deliberated for just seventy-five minutes, and then returned a verdict in favor of Chilson for $2,000,000. The size of the award stunned counsel for both sides. All-state filed a renewed motion for judgment as a matter of law and an alternative motion for a new trial on damages and liability. In response to Allstate's motion for a new trial, Chilson requested that if the trial court found the verdict excessive, it should reduce the award and grant a re-mittitur to the amount of $100,000—the policy limit.

The trial court denied Allstate's motion for judgment as a matter of law, again finding that the evidence, when viewed in the light most favorable to the plaintiff, was sufficient to support the jury's finding of negligence. But, the trial court again noted that while the evidence was sufficient to support the jury's finding of negligence, that evidence was not particularly strong.[5] The trial court also found that the jury's award of $2,000,000 "shock[ed] the conscience" of the court and that the issues of damages and liability were "inexorably intertwined." The trial court also stated that the brief jury deliberation and the large size of the award "creates some uncertainty in the Court's mind as to the diligence undertaken by the jury in consid-

ering the negligence issues in this case."[6] Therefore, the trial court granted a new trial on all issues, rather than the requested remittitur.[7]

Rather than retry the entire case, the parties agreed to submit the case to the trial judge for a decision on the record developed at the first trial, over which that trial judge had presided. The trial judge ultimately concluded: "[a]fter carefully weighing all the evidence . . . that Plaintiff has not proven by a preponderance of the evidence that Mr. Lloyd was negligent, and thus Plaintiff cannot recover from Defendant."[8] This appeal followed.

## II. The Order Granting a New Trial.

Chilson claims that the Superior Court abused its discretion when it granted a new trial on the issues of liability *and* damages. She argues that the issue of liability was properly and definitively determined by the jury and was not "inexorably intertwined" with the issue of damages. She further argues that the sanctity of jury verdicts, as recognized by the Delaware Constitution and in Delaware case law, militates against retrying the issue of liability.

### A. *Chilson's appeal was timely.*

 Initially, Allstate responds that Chilson's appeal from the Superior Court's grant of a new trial is untimely. Allstate argues that a judgment is final for the purpose of appeal when a timely motion for reargument has been decided and Chilson did not file her appeal within thirty days after the court denied her motion for

---

4. SUPER. CT. CIV R. 50; *Rumble v. Lingo*, 147 A.2d 511, 513 (1958).

5. *Order Granting New Trial*, at *4.

6. *Order Granting New Trial*, at *4–5.

7. *Order Granting New Trial*, at *5.

8. *Chilson v. Allstate Ins. Co.*, 2008 WL 5206777, at *4 (Del.Super.Ct. Dec.3, 2008.) [hereinafter *Order on the Merits*].

reargument on the new trial issue.[9] This argument is without merit. Although a motion for reargument following the *denial* of a motion for a new trial is a final judgment;[10] it is well-established that an order *granting* a new trial is an interlocutory order.[11] Supreme Court Rule 42(f) governs a party's failure to seek review of an interlocutory order. It states: "[t]he failure to seek review of or the refusal of the Court to accept an appeal from an interlocutory order under this rule shall not bar a party from seeking review of such interlocutory order on appeal from the final order, judgment or decree."[12] The final judgment of the Superior Court was entered on December 3, 2008. Chilson filed this appeal on December 16, 2008. Therefore, her appeal of the order granting a new trial was timely, and will be considered on the merits.

**B.** *The Superior Court did not abuse its discretion by granting a new trial on both liability and damages.*

 We review the grant or denial of a new trial for abuse of discretion.[13] In general, great deference is given to jury verdicts.[14] "As long as there is a sufficient evidentiary basis for the amount of the award, the jury's verdict should not be disturbed by a grant of . . . a new trial as to damages." "A court's assessment of whether a jury's award of damages is within the range supported by the evidence must necessarily be based on the evidence presented to the jury."[15] To determine whether this threshold has been met, we examine the record "from the perspective most favorable to the jury's verdict."[16] A decision to set aside a jury verdict warrants appellate deference due to the trial judge's "presence at trial and his [or her] duty to see that there is no miscarriage of justice."[17]

 Superior Court Civil Rule 59(a) provides that a "new trial may be granted as to all or any of the parties and on all or part of the issues in an action in which there has been a trial for any of the reasons for which new trials have heretofore been granted in the Superior Court."[18] Although the Rule permits partial retrials, the application of that procedure "is by no

---

9. *See* Supr. Ct. R. 6(a)(i).

10. *See Trowell v. Diamond Supply Co.,* 91 A.2d 797, 799 (Del.1952).

11. *See, e.g. Freeman v. Balderson,* 2007 WL 4463597 (Del.2007); *Connell Ltd P'ship v. Citisteel USA, Inc.* 676 A.2d 901 (Del.1996); *Kappel v. Parker,* 588 A.2d 1142 (Del.1991); *Miller v. Suburban Propane Gas Corp.,* 565 A.2d 913, 914 (Del.1989).

12. Supr. Ct. R. 42(f).

13. *Young v. Frase,* 702 A.2d 1234, 1236 (1997); *Storey v. Camper,* 401 A.2d 458, 466 (Del.1979); *accord Himes v. Gabriel,* 972 A.2d 312, 2009 WL 1090061, at *1 (Del.2009) (Table).

14. Del. Const. art. IV, § 11(1)(a).

15. *Frase,* 702 A.2d at 1237–38.

16. *Storey,* 401 A.2d at 465–66 (citing *Love v. Sessions,* 568 F.2d 357, 361 (5th Cir.1978)).

17. *Walker v. Shoprite Supermarket, Inc.,* 864 A.2d 929 (Del.2004) (Table) (citing *Storey,* 401 A.2d at 465).

18. Super. Ct. Civil R. 59(a). The Rule was based on the United States Supreme Court decision in *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 498, 51 S.Ct. 513, 75 L.Ed. 1188 (1931), which held that the Seventh Amendment did not "require that an issue once correctly determined, in accordance with the constitutional command, be tried a second time, even though justice demands that another distinct issue, because erroneously determined, must again be passed on by a jury." *See* 11 Wright, Miller & Kane, Federal Practice & Procedure § 2814 (3d ed. 1998).

means automatic."[19] It is applied in the interest of justice and two conditions must be satisfied: (1) "[t]he issue to be retried must be clearly severable from the other issues"; and (2) "it must appear that no injustice will result from limiting the issue on retrial."[20] Even so, a full retrial is ordinarily required only where the issues of liability and damages are interwoven.[21]

Assuming the correctness of Chilson's argument that the issues of liability and damages were not "inexorably intertwined," we conclude that the trial court did not abuse its discretion in granting a new trial on both issues, because remittitur would have been an inadequate remedy. "Rule 59 was intended to prevent the retrial of any issue already properly decided and to limit any new trial only to those issues which were incorrectly decided. Where the issue of liability may be severed from the issue of damages, a new trial on the latter issue alone is proper if it can reasonably be said that the liability issue has been determined by the jury."[22] Here, the trial judge found that the extraordinary size of the damages award coupled with the brevity of the deliberations, raised a significant concern as to the jury's diligence in deciding both issues. The disproportionality of the award also raised the trial judge's concern about jury bias, passion, prejudice, or other improper motive.[23] These significant concerns implicate the propriety of the jury's findings both as to negligence and damages.

In support of its grant of a new trial, the trial court relied upon two United States Circuit Court of Appeals cases: *Wells v. Dallas Independent School District*[24] and *Kearns v. Keystone Shipping Co.*[25] In *Wells*, the Fifth Circuit addressed the issue of when remittitur is an inadequate remedy. There, a jury awarded a school superintendent $1.9 million after finding his due process rights had been violated when he was terminated.[26] Through remittitur, the district court reduced the award to $250,000. On appeal, the Fifth Circuit reversed and remanded for a new trial, opining that "at some point on the scale an excessive award becomes so large that it can no longer be considered merely excessive. At that point, when an award is 'so exaggerated as to indicate bias, passion, prejudice, corruption, or other improper motive,' ... remittitur is inadequate and the only proper remedy is a new trial."[27]

In *Kearns*, the First Circuit addressed a case where the jury deliberated for approximately eighty minutes before awarding the plaintiff $99,000 in back pay for age discrimination. The district court granted a new trial, explaining that the jury acted in a "casual and non-delibera-

19. *Chrysler Corp. v. Quimby,* 144 A.2d 123, 137 (Del.1958).

20. *Furek v. Univ. of Del.,* 594 A.2d 506, 524 (Del.1991); *Chrysler,* 144 A.2d at 137; *accord Gasoline Products,* 283 U.S. at 500–01, 51 S.Ct. 513; 11 FEDERAL PRACTICE & PROCEDURE § 2814.

21. *Furek,* 594 A.2d at 524.

22. *Larrimore v. Homeopathic Hosp. Ass'n of Del.,* 176 A.2d 362, 371 (Del.Super.Ct.1961); *accord Yates v. Dann,* 11 F.R.D. 386, 392–93 (D.Del.1951); 11 WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 2814 ("The court must consider the totality of the circumstances in determining realistically whether all issues need to be retried. . . .").

23. *Order Granting New Trial,* at *4–5.

24. 793 F.2d 679, 683 (5th Cir.1986).

25. 863 F.2d 177 (1st Cir.1988).

26. *Wells,* 793 F.2d at 681.

27. *Id.* at 684 (quoting *Caldarera v. Eastern Airlines,* 705 F.2d 778, 784 (5th Cir.1983)).

tive manner" and that its decision was "clearly against the weight of the evidence."[28] The First Circuit affirmed, opining that while "brief jury deliberation is not, in itself, sufficient basis to support a new trial motion[,] ... [w]hen brief jury deliberation is coupled with a verdict that is contrary to the great weight of the evidence ... it creates a situation where the [ ] court has an affirmative duty to set aside the verdict."[29]

Here, whether or not the issues of liability and damages were "inexorably intertwined," the jury awarded Chilson, in minutes, a surprising $2 million verdict that shocked the trial court's conscience. As a result, the Superior Court properly became concerned about the jury's diligence in considering the negligence issues. The court recognized that an excessive award after only brief jury deliberations may indicate jury bias, passion, prejudice, or some other improper motive. Remittitur in these circumstances would have provided an inadequate remedy. On the record of this case we find no abuse of discretion by the Superior Court in granting a new trial on all issues.

## III. The Superior Court's Findings of Fact and Conclusions of Law.

 Chilson next contends that the Superior Court decision following the second trial should be reversed because it is not supported by the evidence. Importantly, in the second trial, the court was sitting as the trier of fact.[30] We review the trial court's findings of fact to ensure they are the result of a logical and orderly reasoning process.[31]

 As a preliminary matter, we note that the trial court decided in the first trial that there was sufficient evidence to support a jury finding that Lloyd was negligent. That decision, however, was not legally inconsistent with the court's conclusion in the second trial that Chilson had not established by a preponderance of the evidence that Lloyd was negligent. There is no inconsistency, because in the first trial the trial court was called upon to determine whether Chilson had carried her burden of producing some evidence of negligence, while in the second trial the case turned on whether Chilson carried her burden of persuading the trier of fact

28. *Kearns,* 863 F.2d at 181–82.

29. *Id.* at 182.

30. *See* DAVID L. FINGER & LOUIS J. FINGER, DELAWARE TRIAL HANDBOOK § 3:9 (1999) ("In circumstances where there is no right to trial by jury or where the parties waive their right to trial by jury, the judge sits as the trier of fact. In such cases the judge is not bound to accept as fact all evidence admitted with or without objection. Rather, the judge retains the power to examine the demeanor of witnesses and other evidence and draw conclusions about their credibility, consistency and factual relevance. In so doing, the court will consider the means of knowledge, strength of memory and opportunity for observation of each witness; the reasonableness or unreasonableness of the testimony; the motives actuating the witness; the fact, if it is a fact, that the testimony has been contradicted; any bias, prejudice or interest of the witness; the manner or demeanor of the witness while testifying; and all other facts and circumstances shown by the evidence which affect the credibility of the testimony. If the court finds the testimony conflicting by reason of inconsistencies, the court must reconcile the testimony as reasonably as possible so as to make one harmonious story of it all. If the court cannot do that, the court must give credit to that portion of the testimony which, in its judgment, is most worthy of credit and disregard any portion of the testimony which, in its judgment, is unworthy of credit.") (citing cases).

31. *Motorola, Inc. v. Amkor Tech., Inc.,* 958 A.2d 852, 861 (Del.2008).

by a preponderance of evidence that Lloyd was negligent.[32]

In the first trial, the trial court found that there was sufficient evidence to support a finding that Lloyd was negligent in ruling on Allstate's motion for judgment as a matter of law. Such a motion required the trial judge to determine whether, viewing the evidence in the light most favorable to the plaintiff, there was "a legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue...."[33] Thus, this ruling determined only whether Chilson had satisfied her *burden of producing evidence* of Lloyd's negligence.[34]

In the second trial, the trial court was sitting as the trier-of-fact. Thus, unlike the first trial, the trial judge was required to weigh the evidence presented and determine whether Chilson had satisfied her *burden of persuasion.* That is a higher standard, requiring that Chilson not only produce evidence sufficient to allow a reasonable trier of fact to decide in her favor, but also requiring her to actually persuade the trial judge (sitting as fact finder) that Lloyd was negligent by a preponderance of the evidence.[35] This latter burden is what the trial court decided Chilson failed to satisfy in the second trial.[36] It is that

judgment, based upon that latter decision, which is under review in this appeal.

■■■ Chilson argues that the court erred when it stated that "the only evidence of breach of duty of care was Mr. Lloyd's testimony that as he 'slowed down to make the turn [he] hit the gas again, [and] that's when [he] started sliding,' combined with the fact that there were inclement weather conditions."[37] She asserts, as additional facts supporting negligence, that Lloyd lost control of his vehicle on a road "successfully navigated" by both Chilson, shortly before the second accident, and by her husband, at the time of the second accident. This argument lacks merit, because Chilson did not successfully navigate Lorewood Grove Drive shortly before the second accident. Less than an hour before, she was involved in a single-car accident on Lorewood Grove Drive. Additionally, whether or not either Mr. or Mrs. Chilson successfully navigated the road in their earlier driving does not demonstrate a breach of the duty of care on the part of Lloyd.

Chilson next argues that the trial court's statement that "[i]t is undisputed that there was 'black ice' on Lorewood Grove Drive at or near the location of the second

**32.** *See Quaker Hill Place v. Saville,* 523 A.2d 947, 954 n. 7 (Del.Super.1987) (quoting EDWARD W. CLEARY, McCORMICK ON EVIDENCE § 336 (2d ed. 1972)). The term "burden of proof" actually encompasses two separate burdens. *Id.* "One burden is that of producing evidence, satisfactory to the judge, of a particular fact in issue. The second is the burden of persuading the trier of fact that the alleged fact is true." KENNETH S. BROUN, McCORMICK ON EVIDENCE § 336 (6th ed. 2006) [hereinafter McCORMICK ON EVIDENCE]; *accord Quaker Hill Place,* 523 A.2d at 954 n. 7.

**33.** SUPER CT CIV. R. 50; *Rumble v. Lingo,* 147 A.2d 511, 513 (1958).

**34.** McCORMICK ON EVIDENCE § 338 (stating the test as more than a "scintilla" of evidence, but only such evidence "that a reasonable man could draw from it the inference of the existence of the particular fact to be proved ...").

**35.** McCORMICK ON EVIDENCE § 339.

**36.** *Order on the Merits,* at *4 ("After carefully weighing all the evidence the Court finds ... that Plaintiff ahs not proven by a preponderance of the evidence that Mr. Lloyd was negligent....").

**37.** *Id.*

accident," [38] is irrelevant to its decision whether Lloyd was negligent, because the existence of black ice on the road does not automatically relieve a driver from liability for negligence. We agree that the presence of black ice is not *dispositive* on the issue of negligence.[39] But this fact is relevant to that issue, like any other road condition. The trial judge did not treat the presence of black ice as dispositive, but included it in a careful weighing of all the evidence.

Finally, Chilson argues that the trial court improperly referenced the fact that Lloyd did not receive a ticket from Cpl. Lochstoer, the responding state trooper. Chilson asserts that this fact is not in the record, but was stated by Lloyd at his deposition and redacted by counsel prior to trial. Still, Cpl. Lochstoer testified without objection that he determined that neither party was at fault because of road conditions. Cpl. Lochstoer also explained that there was no indication that Lloyd was speeding. While the statement that Lloyd did not receive a ticket may not have been admitted verbatim, a reasonable inference could be drawn from the testimony of Cpl. Lochstoer that Lloyd did not receive a ticket because the officer's investigation revealed no evidence of fault or of speeding. The trial court's decision that Chilson had not proven by a preponderance of the evidence that Lloyd was negligent is supported by the record and is not clearly erroneous. Accordingly, we must affirm.[40]

**IV. Conclusion.**

The judgment of the Superior Court is **AFFIRMED.**

---

38. *Id.*

39. *Compare Monahan v. Devaul*, 271 A.D.2d 895, 706 N.Y.S.2d 521 (2000) (holding that the defendant motorist's skidding on ice did not, in and of itself, require a finding of negligence, and upholding a verdict in favor of defendant) *with George v. Graham*, 151 Vt. 527, 561 A.2d 1361 (1989) (affirming trial court's holding that there was sufficient (though not abundant) evidence to find driver

negligent despite the fact that the defendant motorist was not speeding. The evidence showed that it had rained the previous day in the area of the accident, that temperatures had been below freezing at the time of the accident, and that the defendant had entered into another motorist's lane and had caused the accident).

40. *Motorola*, 958 A.2d at 861.