IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

MIDATLANTIC FARM CREDIT, ACA,           )
a federally chartered instrumentality of the   )
United States,                          )
                                        )
            Petitioner,                 )
                                        )
        v.                              )       C.A. No. 5985-ML
                                        )
RONALD W. MORGAN and                    )
RONALD J. MORGAN,                       )
                                        )
            Respondents.                )

MASTER'S REPORT
(Cross-Motions for Summary Judgment)

Date Submitted:  April 15, 2013
Draft Report:  July 9, 2013
Final Report:  May 21, 2014
Reissued Final Report:  March 4, 2015

John I. Ellis, Esquire of Street & Ellis, P.A., Dover, Delaware; Attorneys for Petitioner.

Ronald W. Morgan, Pro Se Respondent.

Ronald J. Morgan, Pro Se Respondent.

LEGROW, Master

This case comes before me on the parties' cross-motions for summary judgment in this action seeking a declaratory judgment that title to property is held by one of the two respondents, Ronald W. Morgan ("Son"). Without that declaration of ownership, and any necessary accompanying relief, a mortgage executed by Son in favor of the petitioner, MidAtlantic Farm Credit, ACA ("MAFC"), will be ineffective because the current operative deed vests title in Ronald J. Morgan ("Father," and collectively with Son, "Respondents"). Because Father is judicially estopped from disputing Son's ownership of the property, I recommend that the Court grant MAFC's motion for summary judgment and deny the Respondents' motion for summary judgment.

## FACTUAL BACKGROUND

The dispositive facts are not disputed. This case involves the ownership of a parcel of approximately 44 acres of real estate located in Cedar Creek Hundred in Sussex County, which is referred to by the Respondents' family as the "West Side Farm." On August 21, 1990, William H. Morgan ("Uncle"),[1] as trustee of the William B. Morgan Jr. Revocable Trust Under Agreement dated Mary 23, 1982 (the "Trust"), reserved a life estate in the West Side Farm for Father's mother, Marceil E. Morgan ("Marceil"), and deeded the remainder interest to Father (the "1990 Deed").[2] On April 20, 1995, Father executed a deed conveying the West Side Farm to Son (the "1995 Deed"). Father's ex-wife challenged the 1995 Deed in an action in this Court, and on May 16, 1997, Vice

---

[1] William H. Morgan is Father's brother and Son's uncle.
[2] Resp'ts Op. Br. in Supp. of Mot. for Summ. J. (hereinafter "ROB"), Ex. A.

1

Chancellor Balick entered an order declaring the 1995 Deed "null and void as a fraudulent conveyance, pursuant to 6 *Del. C.* §§ 1304, 1306 and 1307 … ."[3]

In addition to the apparently unrelated litigation regarding the 1995 Deed, Father also was engaged at that time in ongoing litigation (the "Trust Litigation") with Uncle regarding the Trust, which was established by William B. Morgan, Jr. ("Grandfather"). Both Son and his sister, Suzanne M. Warren, were joined in the Trust Litigation as parties in interest, but did not appear in response to the summons served upon them.[4] After protracted proceedings in that case, the Trust Litigation was settled by a stipulated order dated February 23, 2007 (the "Settlement Order"). The Settlement Order was drafted by Father's attorney and is integral to this case.[5]

Before the Settlement Order was entered, then Master Glasscock issued a draft bench report in which he found that Uncle's conveyance of the West Side Farm to Father in the 1990 Deed "exceeded [Uncle's] powers as trustee," and that the West Side Farm should be "reconstituted as a trust" unless all of the beneficiaries to the Trust came to an agreement as to how the property should be divided.[6] If the parties were unable to reach an agreement, the Court indicated that it would "direct that deeds be written restoring the property to the trust to be administered by the successor trustee in accordance with the written trust."[7]

---

[3] ROB Ex. C ¶ 1.
[4] ROB Ex. D p. 1.
[5] Pet'rs' Answ. Br. in Opp'n to Mot. for Summ. J. (hereinafter "PAB"), Ex. I.
[6] PAB Ex. M at 4:18-5:13.
[7] *Id*. at 6:2-8.

It does not appear that any of the parties took exception to that ruling, and therefore the Court's ruling that the 1990 Deed exceeded Uncle's powers is a final ruling of this Court. Accordingly, at the time the parties entered into the settlement agreement, they did so with an understanding that the West Side Farm was property of the Trust, that Father only was entitled to a life estate in the West Side Farm under the terms of the Trust, and that if the parties could not reach a negotiated resolution regarding the ownership of the various pieces of property, they would be restored to the Trust.

The Settlement Order provided that "all claims between the parties [relating to the real property described in the order] which have been brought or which could have been brought," including Father's and Son's claims, were "released and extinguished," and that

> **[E]ach property shall remain in the possession, use and ownership of the person holding title thereto under the current deed. The properties and the persons holding title to each are**:
>
> A. **Tax District 2-30 May 12.00 Parcel 22.00, West Side Farm (Ronald W. Morgan [Son]);**
> B. Tax District 2-30 Map 12.00 Parcel 45.00, East Side Farm (William H. Morgan [Uncle]);
> C. Tax District 2-30 Map 12.00 Parcel 45.01 (Bradley M. Johnson);
> D. Tax District 2-30 Map 12.00 Parcel 44.00 (William H. Morgan [Uncle]);
> E. Tax District 2-30 Map 12.00 Parcel 44.03 (Suzanne Warren & Robert Warren);
> F. Tax District 2-30 Map 13.00 Parcel 440.00 (John Schultee & Alton E. Mast); and
> G. Tax District 2-30 May 12.00 Parcel 44.01 (William H. Morgan [Uncle]).[8]

---

[8] ROB Ex. D ¶ 1 (emphasis added).

The Settlement Order went on to specify that Uncle would receive sole ownership of the stock of certain corporations whose ownership, operation, and management was at issue in the litigation,[9] and that

> In consideration of the release by [Father] of his claims to one half of the appraised values of the East Side Farm and the West Side Farm[,] and his claims to one-half of the capital stock of the corporations named in Paragraph 2 hereof, [Uncle] shall pay THREE HUNDRED TWENTY FIVE THOUSAND EIGHT HUNDRED THIRTY EIGHT DOLLARS AND FIFTY CENTS ($325, 838.50) to [Father] … .[10]

Upon receipt of such payment, the parties agreed that the Settlement Order would operate as a "complete, absolute and final general release and compromise" of all

> past, present and future claims, demands, actions and causes of action, debts, obligations, promises, covenants, warrants, contracts, controversies, agreements, promises, damages, liens, judgments, third party actions and causes of action, and any and all suits at law or in equity (whether based on contract, tort, common law, statute or otherwise) … of any nature whatsoever, known or unknown, fixed or contingent, which either party has or may have against the other, arising out of or relating in any way to the ownership or operation of the real property described in Paragraph 1 hereof … .[11]

The Trust Litigation then was dismissed with prejudice.[12]

At the time the Settlement Order was entered, Father was not living on the West Side Farm. Marceil was living on the property, and Son was using the West Side Farm to operate his farm business, R.W. Morgan Farms, Inc.[13] Marceil Morgan is now deceased, and Son has complete possession and use of the West Side Farm.[14] Son has been

---

[9] *Id.* ¶ 2.
[10] *Id.* ¶ 3.
[11] *Id.* ¶ 4.
[12] *Id.* ¶ 5.
[13] ROB p. 7.
[14] PAB Ex. N at 23:22-24:8.

operating his farming business on the West Side Farm for several years, and over the years the business accumulated substantial debt with MAFC. In 2007, R.W. Morgan Farms, Inc. was indebted to MAFC on six promissory notes, all of which were in default. Son personally had guaranteed those loans, and therefore also faced substantial liability when MAFC accelerated the debt and demanded payment in full from Son and his business.[15]

In exchange for MAFC's agreement to refrain from collecting the debt for a period of 8 months, Son entered into a forbearance agreement with MAFC and granted MAFC a mortgage on the West Side Farm (the "Mortgage").[16] Son represented in both the Mortgage and the forbearance agreement that he was the owner of the West Side Farm. Those representations were consistent with several others Son made over the years in various forums, including in a 2002 proceeding in the Superior Court,[17] a subdivision plan recorded in the Sussex County Recorder of Deeds office in 2008,[18] and in several listing agreements with various real estate agents.[19]

Before entering into the forbearance agreement and accepting the Mortgage, MAFC performed a title search that identified Son as the owner of the property as a result of the 1995 Deed. The title search failed to identify the Court order declaring that deed as null and void. As respondents correctly note, and MAFC does not dispute, the title search did not rely on the Settlement Order.

---

[15] PAB Ex. B p. 1
[16] PAB Ex. C.
[17] PAB Ex. A.
[18] PAB Ex. D.
[19] PAB Ex. E.

5

Son and R.W. Morgan Farms, Inc. ultimately defaulted on the Mortgage and forbearance agreement, MAFC foreclosed on the Mortgage, and judgment was entered in that case.[20] An issue then arose regarding the title to the West Side Farm, and MAFC was denied title insurance as a result of the issue. MAFC therefore filed this action seeking a declaratory judgment that fee simple title in the West Side Farm was vested in Son by the Settlement Order.

**ANALYSIS**

Although the briefing in this case was somewhat unusual,[21] the parties have filed cross motions for summary judgment. Under Rule 56(h), when parties file cross motions for summary judgment and do not argue that material issues of fact are in dispute, the motions are viewed as a stipulation for decision on the merits based on the record submitted.[22] Neither party contends that there are material facts in dispute, nor are any disputed facts apparent from my review of the record.

MAFC argues that Respondents are judicially and equitably estopped from denying that Son owns the West Side Farm because of the representations contained in the Settlement Order, along with the representations Son publicly has made, including to MAFC in the forbearance agreement and the Mortgage. The Respondents contend that

---

[20] *See* Pet. for Declaratory J. ¶ 10. Although the petition avers that judgment was entered, it is not clear how that was accomplished given the discrepancies relating to the title to the West Side Farm.

[21] Rather than filing simultaneous cross motions, the parties first fully briefed Respondents' motion for summary judgment, at which point MAFC filed a motion for summary judgment, and three more briefs (opening, answering, reply) were filed in conjunction with that motion. Nevertheless, at argument counsel agreed that there were no disputed issues of fact and both sides agreed that the case was ripe for judgment on the record before the Court.

[22] Ct. Ch. R. 56(h); *Sandie, LLC v. Plantations Owners Assoc.*, 2012 WL 3041181, at *6 (Del. Ch. July 25, 2012).

MAFC cannot prove the elements of either judicial or equitable estoppel, and that the Settlement Order was not sufficient to vest title in Son. Because I conclude that Father is judicially estopped from arguing that anyone other than Son owns the West Side Farm, I do not need to reach the equitable estoppel argument.

Judicial estoppel operates to prevent a party from taking a position that is inconsistent with a position previously taken in another legal proceeding.[23] The doctrine is intended to "protect the integrity of the judicial proceedings."[24] Judicial estoppel does not preclude all inconsistent positions or arguments; the doctrine applies only where "the litigant's position contradicts another position that the litigant previously took *and* that the Court was successfully induced to adopt in a legal ruling."[25]

Delaware courts consider several factors that inform the decision of whether judicial estoppel applies in a particular case, namely whether: (1) a party's later position is "clearly inconsistent" with its earlier position; (2) the party "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) the party asserting the purportedly inconsistent position "would derive an unfair advantage or impose an unfair detriment on the

---

[23] *Motorola Inc. v. Amkor Tech., Inc.*, 958 A.2d 852, 859 (Del. 2008); *TR Investors, LLC v. Genger*, 2013 WL 603164, at *19 (Del. Ch. Feb. 18, 2013).
[24] *Motorola Inc.*, 958 A.2d at 859.
[25] *Id*. at 859–60 (quoting *Siegman v. Palomar Med. Techs., Inc.*, 1998 WL 409352, at *3 (Del. Ch. July 13, 1998)) (emphasis in original).

opposing party if not estopped."[26]  Each of these factors supports the application of judicial estoppel in this case.

First, Father's position that he owns the West Side Farm is directly at odds with the position Father took when he asked this Court to approve the Settlement Order. Although Father contends that the identification of Son as the owner of the West Side Farm in Paragraph 1(A) of the Settlement Order simply is a typo,[27] that argument elides Paragraph 3 of the Settlement Order, wherein Father agreed to accept $325,838.50 to relinquish his claim for one half of the appraised value of the West Side Farm, along with other properties.  If, as Father now contends, he expected to maintain an ownership interest in the West Side Farm, he would not have been entitled to receive a monetary payment in exchange for his interest in that property.  Thus, Father's position in this litigation is wholly inconsistent with his representations to this Court in the Trust Litigation.

Second, by seeking this Court's approval of the parties' settlement agreement, and memorializing the terms of the settlement agreement in a stipulated court order, Father took a position in the Trust Litigation that the Court was persuaded to accept.  Father argues, however, that the representations of ownership contained in the Settlement Order did not persuade the Court, who simply entered the stipulated order submitted by the parties.  Such a finding would, however, ignore the significance of court orders and the

---

[26] *In re Silver Leaf, L.L.C.*, 2004 WL 1517127, at *2 n.9 (Del. Ch. Jun. 29, 2004). *Accord Whittington v. Dragon Group L.L.C.*, 2011 WL 1457455, at *9 (Del. Ch. Apr. 15, 2011); *Capaldi v. Richards*, 2006 WL 3742603, at *2 (Del. Ch. Dec. 8, 2006).
[27] PAB Ex. L at 13:15-14:21.

legal effect of the Court's entry of the order. Without question, Father would have expected this Court to enforce the Settlement Order had Uncle sought to avoid the payment due Father. The parties' decision to seek a court-ordered settlement, rather than simply signing an agreement and dismissing the case, was significant. The parties to the Trust Litigation sought this Court's approval of the settlement so that there would be no question about its enforceability. Having done so, Father cannot now take the position that the Order was not important or did not reflect this Court's acceptance of the parties' representations.[28] Indeed, if Father's position were accepted, it would require this Court to conclude, contrary to the terms of its prior Settlement Order, that Father both received a payment to release his claims to the property and increased his ownership position beyond the interest he then claimed to have.

It follows that, if Father were to succeed in convincing this Court that he is the owner of the West Side Farm, notwithstanding the contrary representation in the Settlement Order, he would derive an unfair advantage from his shifting positions. He took the position in the Trust Litigation that he was entitled to one half of the West Side Farm. As a result of the stipulated order entered by this Court, Father received a substantial sum of money, which sum presumably represented a valuation of his purported ownership position. If he is permitted to now shift positions and claim

---

[28] *See, e.g. Javidan-Nejad v. Navadeh*, 2013 WL 1089099, at *2-3 (Ohio Ct. App. Mar. 14, 2013) (holding that by voluntarily entering into a stipulation and order before a California court, defendant was judicially estopped from contesting the California court's jurisdiction); *In re Thao*, 2007 WL 1655744, at *2 (Bankr. W.D.Mo. Jun. 6, 2007) (judicial estoppel applied because debtors' position that assignment was invalid was clearly inconsistent with earlier position advanced in stipulated confirmation order, and which the court "accepted" by entering the confirmation order).

ownership of the West Side Farm, he will truly have achieved the proverbial position of having his cake and eating it, too. It would not be fair to allow Father to retain both the benefit of the payment he received in the settlement and the benefit of the property interest he gave up in order to receive that payment.

Accordingly, Father is judicially estopped from claiming an ownership interest in the West Side Farm and from arguing that Son is not the owner of the West Side Farm. Because no deed has been recorded to reflect Son's interest in the property, Father should be required to execute a deed that reflects the agreement reached by the parties and memorialized in the Settlement Order.

**CONCLUSION**

For the foregoing reasons, I recommend that the Court enter an order granting MAFC's motion for summary judgment. This is my final report and exceptions should be taken in accordance with Rule 144.

/s/ *Abigail M. LeGrow*
Master in Chancery

10