# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NATIONAL AMUSEMENTS, INC., NAI ENTERTAINMENT HOLDINGS, LLC, and SHARI E. REDSTONE, | ) ) ) ) | |
| | ) | C.A. No. N22C-06-018 AML CCLD |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, IRONSHORE INDEMNITY, INC., STARR INDEMNITY & LIABILITY COMPANY, AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Submitted: January 25, 2023
Decided: April 28, 2023

## MEMORANDUM OPINION

Upon Plaintiffs' Motion to Dismiss Counterclaims and Strike Affirmative
Defenses: **GRANTED IN PART, DENIED IN PART**.

Matthew Fischer, Esquire, Jennifer Wasson, Esquire, Jacqueline Rogers, Esquire, Carla Jones, Esquire, POTTER ANDERSON & CORROON, LLP, Wilmington, Delaware, David B. Goodwin, Esquire, COVINGTON & BURLING LLP, San Francisco, California, Neema Sahni, Esquire, COVINGTON & BURLING LLP, Los Angeles, California, Mitchell F. Dolin, Esquire, Jad H. Khazen, Esquire, COVINGTON & BURLING LLP, Washington, DC; *Attorneys for Plaintiffs National Amusements, Inc., NAI Entertainment Holdings, LLC, and Shari E. Redstone.*

Michael Busenkell, Esquire, GELLERT SCALI BUSENKELL & BROWN LLC Wilmington, Delaware, Manuel Mungia, Jr., Esquire, Matthew E. Pepping, Esquire, Chad W. Schreiber, Esquire, CHASNOFF MUNGIA VALKENAAR PEPPING & STRIBLING LLP, San Antonio, Texas; *Attorneys for Defendant Endurance American Insurance Company.*

Carmella P. Keener, Esquire, COOCH AND TAYLOR, P.A., Wilmington, Delaware, Ronald P. Schiller, Esquire, Daniel J. Layden, Esquire, Isabel C. Naveira López, Esquire, HANGLEY ARONCHIK SEGAL PUDLIN & SCHILLER, Philadelphia, Pennsylvania; *Attorneys for Defendant Ironshore Indemnity, Inc.*

Christopher B. Chuff, Esquire, TROUTMAN PEPPER HAMILTON SANDERS LLP, Wilmington, Delaware, Kevin F. Kieffer, Esquire, Ryan C. Tuley, Esquire, TROUTMAN PEPPER HAMILTON SANDERS LLP, Irvine, California, Ciaran B. Way, Esquire, TROUTMAN PEPPER HAMILTON SANDERS LLP, Philadelphia, Pennsylvania; *Attorneys for Defendant Starr Indemnity & Liability Company.*

Kurt M. Heyman, Esquire, Aaron M. Nelson, Esquire, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware, Scott B. Schreiber, Esquire, Arthur Luk, Esquire, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, DC; *Attorneys for Defendant National Union Fire Insurance Company of Pittsburgh, PA.*

**LEGROW, J.**

The plaintiffs in this action seek insurance coverage for litigation currently pending in the Delaware Court of Chancery. The litigation at issue challenges the fairness of the amount paid in a merger between two companies the plaintiffs controlled. The defendant insurance companies have denied coverage for several reasons, including that the current litigation is related to earlier litigation that challenged several corporate governance decisions plaintiffs undertook to strengthen their control over the two companies that later merged.

The plaintiffs moved to dismiss the defendants' counterclaims that are based on the interrelated claims coverage defense. The plaintiffs also moved to strike the defendants' affirmative defenses that are based on the related claims theory as well as the policies' prior litigation and prior notice exclusions. The primary question before the Court is whether dismissal of the counterclaims should be granted before the defendants have been given access to the unredacted complaints in the underlying litigation and permitted discovery into the plaintiffs' other indemnification claims that allegedly advance a position inconsistent with the plaintiffs' current coverage position. The Court concludes dismissal would be premature on this record and therefore denies the motion as to the counterclaims and affirmative defenses that are based on the interrelated claims clause and the prior litigation exclusions.

On the other hand, the defendants have asserted counterclaims and affirmative defenses based on the policies' prior notice exclusion, and it is apparent from the record that the plain language of that exclusion does not apply in this case. The Court therefore grants the plaintiffs' motion as to the prior notice exclusion. My reasoning follows.

**FACTUAL AND PROCEDURAL BACKGROUND**

Unless otherwise noted, the following facts are not disputed. The plaintiffs in this action, National Amusements, Inc. ("NAI"), NAI Entertainment Holdings, LLC ("NAIEH"), and Shari E. Redstone (collectively, the "NAI Policyholders"), are insured under a tower of directors' & officers' ("D&O") liability insurance policies issued by the defendants. During the time period relevant to this case, NAI owned controlling interests in CBS Corporation and Viacom Inc, and Ms. Redstone was a director of CBS and the primary beneficiary of the trust that controls NAI. NAIEH is a subsidiary of NAI.

In late 2019, Viacom and CBS merged, forming a new entity known as Paramount Global. Stockholders of both Viacom and CBS filed actions in the Court of Chancery challenging the merger price (the "Merger Litigation"), with CBS stockholders arguing the price was too high and Viacom stockholders arguing the price was too low. The defendant insurers have denied the NAI Policyholders' claims seeking coverage for the Merger Litigation under the D&O policies in effect

at the time the Merger Litigation was filed. The NAI Policyholders filed this action seeking a declaratory judgment as to the defendants' obligation to cover the loss the NAI Policyholders have incurred or may incur in connection with the Merger Litigation.

The defendants have asserted various counterclaims and affirmative defenses in this action, several of which are based on the defendants' contention that the Merger Litigation is related to four different actions filed against one or more of the NAI Policyholders in 2016. Based on their interrelated claims argument, the defendants contend coverage under the D&O Policies is not triggered or is expressly excluded.

## A.    The D&O Policies

The NAI Policyholders seek coverage for the Merger Litigation under a tower of four D&O policies issued for the policy period of June 30, 2017 to December 30, 2018 and renewed on materially identical terms for the period of December 30, 2018 to December 30, 2019 (the "Policies").[1] NAI expanded its D&O coverage in 2017; in previous years, NAI's D&O coverage was subject to a $5 million sublimit for shareholder derivative claims.

---

[1] The NAI Policyholders seek coverage under NAI's 2017-18 policies or its 2018-19 policies. There is no material difference between those policies for purposes of the pending motion, and the Court therefore does not otherwise distinguish between those policies in this opinion. Unless otherwise noted, citations to the Policies will be to the 2018-19 Policies.

Defendant Endurance American Specialty Insurance Company ("Endurance') issued the primary policy, which has a $10 million limit and a $2.5 million self-insured retention. Defendants Ironshore Indemnity Company ("Ironshore"), Starr Indemnity & Liability Company ("Starr"), and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union" and collectively with Endurance, Ironshore, and Starr, the "Defendants")[2] issued excess policies of $10 million each that generally "follow form" to Endurance's primary policy and afford coverage on the same terms and conditions unless the excess policy expressly provides otherwise.[3] The Policies are "claims made" policies, which means they provide coverage for claims first made within the stated policy period.

The Policies require the Defendants to provide coverage for "Loss"[4] an Insured Entity becomes legally obligated to pay on account of a claim for a "Wrongful Act:"

> (B) The Insurer shall pay on behalf of an Insured Entity all Loss which an Insured Entity has paid as indemnification to, for or on behalf of an Insured Person and which the Insured Person becomes legally obligated to pay on account of any Claim first made against any Insured Entity during the Policy Period or, if applicable, the Optional Extension Period, for Wrongful Acts.

---

[2] For reasons that are unclear, the NAI Policyholders refer to National Union as "AIG," but the Court uses National Union throughout this opinion.

[3] For example, National Union's policy has a prior litigation exclusion that is different from Endurance's primary policy.

[4] "Loss" is defined broadly in the Policies to include damages, judgments, amounts paid in settlement, and defense costs.

4

(C) The Insurer shall pay on behalf of any Insured Entity all Loss which the Insured Entity becomes legally obligated to pay on account of any Claim first made against such Insured Person, individually or otherwise, during the Policy Period, or if applicable, the Optional Extension Period, for Wrongful Acts.[5]

The Policies expansively define a "Wrongful Act" as:

(a) any actual or alleged act, omission, error, neglect, statement, misstatement, misleading statement, breach of fiduciary duty or any other breach of duty committed or attempted, or allegedly committed or attempted by an Insured Person by reason of his or her capacity as such; (b) any matter asserted against an Insured Person by reason of his or her status as such; (c) any actual or alleged act, omission, error, neglect, statement, misstatement, misleading statement, breach of fiduciary duty or any other breach of duty committed or attempted, or allegedly committed or attempted by an Insured Person in his or her Outside Capacity;16 (d) any matter asserted against an Insured Person arising out of or by reason of his or her serving or having served in an Outside Capacity; (e) any actual or alleged act, omission, error, neglect, statement, misstatement, misleading statement, breach of fiduciary duty or any other breach of duty committed or attempted, or allegedly committed or attempted by an Insured Person in his or her capacity as such Controlling Person or by reason of his or her status as such or security holder of a Portfolio Company.[6]

The Defendants' coverage denials arise in part from the Interrelated Wrongful Acts clause contained in the primary policy. That clause provides that all claims arising from "Interrelated Wrongful Acts" constitute a single claim and shall be deemed to be made in the earliest policy period in which the earliest interrelated claim was made. Specifically, the clause states:

---

[5] Starr Answer, Affirmative Defenses, and Counterclaim, D.I. 36 (hereinafter cited as "Starr Answ.") Ex. B, Management and Professional Liability Coverage Part, § 1 – Insuring Agreement.
[6] *Id.* § II(B).

> All Claims arising from Interrelated Wrongful Acts shall be deemed to constitute a single Claim subject to a single Retention and shall be deemed to have been first made and notice at the earliest time at which the earliest such Claim is commenced or deemed to have been made pursuant to GENERAL DEFINITIONS, (E), or, if applicable, GENERAL CONDITIONS (C)(1) or (C)(2).[7]

Interrelated Wrongful Acts are defined as "Wrongful Acts that are based on, arising out of, resulting from, in consequence of or involving any of the same or related or series of related facts, transactions or events."[8]

The Policies also include two types of exclusions that the Defendants have invoked in their counterclaims and affirmative defenses and that the NAI Policyholders challenge in their pending motion. First, the Policies contain a "Prior Notice Exclusion" that excludes coverage for a claim that was the subject of notice under an earlier policy:

> The Insurer shall not pay Loss for any Claim based upon, arising out of, directly or indirectly resulting from, on consequence of, or in any way involving any Wrongful Act or Interrelated Wrongful Act which, before the Inception Date of this Policy, was the subject of any notice given under any other policy of insurance which this Policy is a renewal or replacement, but only if coverage is afforded or accepted under such prior policy (or would have been afforded and accepted except for the exhaustion of its limits of liability) for such Loss, in whole or in part, as a result of such notice.[9]

Second, the excess Policies contain Pending and Prior Litigation exclusions (the "PPL Exclusions") that exclude coverage for loss incurred in connection with a

---

[7] *Id.* § III(D).
[8] *Id.* § I(N).
[9] *Id.* § III(B)(1).

claim that arises from or is related to Wrongful Acts challenged in litigation that predated, or was pending as of, June 30, 2017. The PPL exclusion in the Ironshore and Starr policies provides:

> [T]his Policy shall not cover any loss in connection with any Claim alleging, arising out of , based upon or attributable to, as of June 30, 2017[,] and pending or prior (1) litigation; . . . including any Claim or loss alleging or derived from the same or essentially the same facts, or the same or related act(s), error(s), omission(s) or Wrongful Act(s), as alleged in such pending or prior litigation . . . .[10]

The PPL exclusion in the National Union policy contains different language, which National Union contends is broader than the Ironshore/Starr exclusion:

> [T]he Insurer shall have no liability to make any payment in connection with any pending or prior litigation as of [June 30, 2017] or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation.[11]

Defendants take the position that several actions filed in 2016 against or involving the NAI Policyholders preclude coverage for the Merger Litigation under the Policies' exclusions and Interrelated Wrongful Acts clause.

## B. The 2016 Litigation

Defendants allege the Merger Litigation "relate[s] to and involve[s] Ms. Redstone's alleged scheme to consolidate power over NAI, Viacom, and CBS for the purpose of forcing the combination of CBS and Viacom."[12] Defendants identify

---

[10] *Id.* Ex. C, Endorsement 4; *Id.*, Ex. D, Endorsement 5.
[11] Nat'l Union Answ. and Affirmative Defenses at 45-46.
[12] Defs.' Answ. Br. in Opp. to Pls.' Mot. to Dismiss at 5.

four lawsuits filed in 2016 that they claim also relate to this scheme: an action in Massachusetts, an action in California, and two actions in the Delaware Court of Chancery (collectively, the "2016 Actions").[13]

The Massachusetts action, styled *Dauman v. Redstone*, was filed in probate court in Norfolk, Massachusetts (the "*Dauman* Action").[14] In that action, Phillippe Dauman and George Abrams challenged their removal as directors of NAI and trustees of the trust that controls NAI. The *Dauman* plaintiffs alleged Sumner Redstone was suffering from "profound" physical and mental ailments, and Ms. Redstone "manipulated her father" to assume control of his businesses.[15] The plaintiffs averred Ms. Redstone's actions, if left unchecked, would effect an "unlawful corporate takeover" and allow her to exercise control over Sumner Redstone's companies against his wishes.[16] Mr. Redstone responded to the *Dauman* Action by filing an action in California, *In re Sumner M. Redstone National*

---

[13] *Id.* at 12-15. Plaintiffs' Opening Brief also refers to three lawsuits filed in 2018, but Defendants do not refer to that litigation in their response to the Motion. The Court therefore assumes Defendants are not relying on those 2018 actions for purposes of their coverage denial.

[14] *Dauman v. Redstone, et al.*, No. 16-E0020QC (Mass. Probate and Fam. Ct.); *See* Aff. of Carla Jones, Esq. in Supp. of Pls.' Mot. to Dismiss, Ex A. Under settled Delaware law, the Court may take judicial notice of the pleadings filed in the various jurisdictions. *See Aequitas Sols., Inc. v. Anderson*, 2012 WL 2903324, at *3 n. 17 (Del. Ch. July 10, 2012) (holding that the court may take judicial notice of a declaration because it was a pleading filed in a California bankruptcy proceeding); *In re Wheelabrator Tech. Inc. S'holders Litig.*, 1992 WL 212595, at *12 (Del. Ch. Sept. 1, 1992) (holding that "publicly filed documents . . . are judicially noticeable on a motion to dismiss.").

[15] *Dauman*, No. 16-E0020QC (Mass. Probate and Fam. Ct.); *See* Aff. of Carla Jones, Esq. in Supp. of Pls.' Mot. to Dismiss, Ex A ¶¶ 6-8.

[16] *Dauman*, No. 16-E0020QC (Mass. Probate and Fam. Ct.); *See* Aff. of Carla Jones, Esq. in Supp. of Pls.' Mot. to Dismiss, Ex A ¶ 9.

*Amusements Trust* (the "*SMR Trust* Action").[17]  In that action, Mr. Redstone sought an order confirming the validity of Dauman's and Abrams' removal as trustees.

In June 2016, Frederic Salerno filed an action under 8 *Del. C.* § 225(a) in the Delaware Court of Chancery (the "*Salerno* Action").[18]  Salerno sought a judicial determination of the validity of a written consent purporting to amend Viacom's bylaws and remove five individuals, including Salerno, as Viacom directors.  The *Salerno* Action alleged Ms. Redstone had taken advantage of a decline in Sumner Redstone's health to obtain control of his assets, including NAI, CBS, and Viacom.[19]  Among other allegations, Salerno alleged Ms. Redstone's actions were interfering "with the Board's ability to explore value enhancing alternatives, such as a possible transaction involving Paramount Pictures, to the detriment of [Viacom's] stockholders."[20]

The *Dauman*, *Salerno*, and *SMR Trust* actions settled in August 2016.  Under the terms of that settlement, Viacom's President and CEO resigned from their positions and the directors purportedly hand-selected by Ms. Redstone remained on the Viacom and NAI boards.  In the settlement, Viacom agreed to defend and indemnify Ms. Redstone, NAI, and NAIEH for all claims arising from or relating to

---

[17] *In re Sumner M. Redstone Nat'l Amusements Trust*, No. 16STPB00618 (Cal. Super. Ct); *See* Aff. of Carla Jones, Esq. in Supp. of Pls.' Mot. to Dismiss, Ex B.
[18] *Salerno v. Nat'l Amusements, Inc.*, Del. Ch., C.A. No. 12473-CB.
[19] *Id.*, Compl. ¶¶ 12-16.
[20] *Salerno*, Del. Ch., C.A. No. 12473-CB, Compl. ¶ 18.

those three actions or "any other stockholder actions, securities disclosure actions or stockholder derivative actions arising from similar facts and circumstances."[21] The parties to the settlement agreement also entered into mutual releases with respect to the claims at issue in those cases, including "any and all claims" arising out of the proposed 2016 merger.[22]

Finally, in July 2016, one of Viacom's Class B (non-voting) stockholders filed an action on behalf of Viacom's Class B stockholders in the Delaware Court of Chancery (the "Class B Litigation").[23] The complaint in the Class B Litigation originally alleged Sumner Redstone, Ms. Redstone, NAI, and NAIEH breached their fiduciary duties by purporting to amend Viacom's bylaws and by removing Viacom's independent directors and replacing them with directors loyal to Ms. Redstone. The original complaint alleged these actions limited Viacom's ability to explore and agree to a transaction involving Paramount Pictures.[24] After the August settlement of the *Dauman*, *Salerno*, and *SMR Trust* actions, the plaintiffs amended the complaint and alleged Ms. Redstone was attempting to wield her control of NAI to propose a CBS-Viacom merger.[25] According to the amended complaint, the letter NAI sent CBS and Viacom proposing the merger "insist[ed] on one and only one

---

[21] *See, e.g.,* Endurance Answ., Affirmative Defenses and Countercl. ¶ 30.
[22] *In re Viacom Inc. S'holders Litig.*, 2020 WL 7711128, at *17 n.197 (Del. Ch. Dec. 30, 2020).
[23] *In re Viacom Class B S'holder Litig.*, Del. Ch., C.A. No. 12545-CB.
[24] *Id.*, Compl. ¶ 90.
[25] *In re Viacom Class B*, Del. Ch., C.A. No. 12545-CB, Am. Compl. ¶¶ 9-10.

strategic deal to the exclusion of all other deals that might yield more for the Viacom stockholders."[26] The Class B Litigation was dismissed by stipulation in July 2017.[27]

## C. The Merger Litigation

On August 13, 2019, CBS and Viacom announced they had agreed to combine the two companies in a transaction under which each Viacom share would be exchanged for 0.59625 shares of CBS (the "Merger").[28] The Merger closed in December 2019. The Merger's announcement prompted a flurry of lawsuits filed by Viacom stockholders in the Delaware Court of Chancery that ultimately were consolidated in a single case styled *In re Viacom Stockholder Litigation* (the "*Viacom* Merger Litigation"). The complaint in that case alleged the Merger was the culmination of a four-year process, spearheaded by Ms. Redstone, "to assume control of the media empire [Sumner Redstone] built so that she can re-unify (and consolidate control over) the two Redstone 'family' businesses."[29] The complaint in the *Viacom* Merger Litigation detailed the events that were challenged in the 2016 Actions, including the removal of five Viacom directors and NAI's proposal to combine the companies in 2016, which ultimately was unsuccessful.[30] The

---

[26] *In re Viacom Class B*, Del. Ch., C.A. No. 12545-CB, Am. Compl. ¶ 9.
[27] *In re Viacom Class B*, 2017 WL 2937810 (Del. Ch. July 7, 2017).
[28] *In re Viacom Inc. S'holder Litig.*, Del. Ch., Consol. C.A. No. 2019-0948 SG, Compl. ¶ 9.
[29] *Id.*, Compl. ¶ 2.
[30] *Id.*, Compl. ¶¶ 3, 61-64.

complaint described continued efforts after 2016 to pursue a merger between CBS and Viacom, which finally succeeded in 2019.[31]

The *Viacom* complaint alleges the defendants breached their fiduciary duties to Viacom's stockholders by favoring NAI's and Ms. Redstone's interests to the detriment of other Viacom's stockholders. The stockholder plaintiffs contend the Viacom board and special committee were dominated by directors loyal to Ms. Redstone. Those boards, the stockholders allege, ultimately approved an exchange ratio for the Merger that did not give Viacom stockholders fair value for their holdings.

Not to be outdone, CBS stockholders also challenged the Merger through a series of actions filed in the Court of Chancery and consolidated into *In re CBS Corporation Stockholder Class Action and Derivative Litigation* (the "*CBS* Merger Litigation").[32] Like the *Viacom* complaint, the complaint in the *CBS* Merger Litigation recounts the events that were the subject of the 2016 Actions, including Ms. Redstone's assumption of control of NAI, CBS, and Viacom and the unsuccessful proposed combination in 2016.[33] As in *Viacom*, the *CBS* plaintiffs allege the *CBS* defendants breached their fiduciary duties by approving the Merger,

---

[31] *Id.*, Compl. ¶¶ 63, 194.
[32] *In re CBS Corp. S'holder Class Action and Derivative Litig.*, Del. Ch., Consol. C.A. No. 2020-0111 SG.
[33] *Id.*, Compl. ¶¶ 1, 49, 155.

but the *CBS* plaintiffs maintain the transaction overvalued and "bail[ed] out" Viacom.

The *CBS* Complaint avers Ms. Redstone's and NAI's conduct "re-made the [CBS] board of directors and senior management . . . eliminating opposition to a combination of CBS and Viacom," and "finally forced through [Ms. Redstone's] desired merger" "after years of persistent and aggressive efforts."[34] The Complaint also alleges the *CBS* defendants failed to disclose in the Merger proxy that CBS and Viacom discussed possibly combining in 2016 and 2018 and that, when the 2016 merger did not succeed, Ms. Redstone "threatened CBS directors that she would get the merger done even if she had to find another way."[35]

The Court of Chancery considered but ultimately denied motions to dismiss the complaints in the Merger Litigation. The decisions denying the motions to dismiss include a discussion of the events in 2016 that were the subject of the 2016 Actions and the stockholder plaintiffs' allegation that "Ms. Redstone initiated a campaign to consolidate the media empire her father had built" that culminated in the Merger.[36] In its decision in the *Viacom* case, the Court of Chancery specifically found that the NAI Policyholders' "past conduct [was] relevant in that, according to

---

[34] *Id.*, Compl. ¶¶ 1, 3.
[35] *Id.*, Compl. ¶ 168.
[36] *In re Viacom*, 2020 WL 7711128, at *2; *see also In re CBS*, 2021 WL 268779, at *1-2 (Del. Ch. Feb. 4, 2021).

13

[the p]laintiffs, [it] set[s] the stage for NAI's actions with respect to the Merger."[37] On the other hand, the Vice Chancellor emphasized that the plaintiffs "are not bringing claims relating to the [2016 events] that are the subject of the release [in the 2016 settlement agreement]. They are stating facts relating to those transactions to support new claims regarding a new transaction."[38]

Defendants also allege in their counterclaims that Ms. Redstone demanded advancement and indemnification under the 2016 settlement agreement.[39] That settlement agreement, according to Defendants, required ViacomCBS to defend and indemnify the NAI Policyholders "for any claims arising out of or relating to the 2016 Actions, 'or any other stockholder actions, securities disclosure actions, or shareholder derivative actions arising from similar facts and circumstances.'"[40] Defendants aver that this demand demonstrates the NAI Policyholders' understanding that the Merger Litigation relates back to the facts and circumstances that gave rise to the 2016 Actions.[41]

The Merger Litigation is well-advanced in the Court of Chancery. According to the information counsel in this action provided to the Court during oral argument, both cases are scheduled for trial this year.

---

[37] *In re Viacom*, 2020 WL 7711128, at *17 n.197.
[38] *Id.*
[39] Endurance Countercl. ¶ 9; See *also* Starr Countercl. ¶ 9.
[40] Endurance Countercl. ¶ 9.
[41] *Id.*

## D.    Procedural Background

The NAI Policyholders made claims to Defendants seeking coverage for the Merger Litigation.  After Defendants refused to provide coverage for several independent reasons, the NAI Policyholders filed this action seeking a declaratory judgment that the Policies afford coverage for the NAI Policyholders' losses in connection with the Merger Litigation.[42]  Defendants answered the complaint and asserted various affirmative defenses, including defenses based on the Interrelated Wrongful Acts clause, the Prior Notice Exclusion, and the PPL Exclusions.  Endurance, Starr, and Ironshore also asserted counterclaims based on those same policy provisions.

The NAI Policyholders moved to dismiss the counterclaims under Rule 12(b)(6) for failure to state a claim and moved to strike some of the affirmative defenses under Rule 12(f) as legally insufficient.  The NAI Policyholders seek to dismiss all the counterclaims asserted by Endurance, Starr, and Ironshore, and seek to strike Endurance's third and fourth affirmative defenses, Ironshore's third, fourth, and tenth affirmative defenses, Starr's third, fourth, and sixth affirmative defenses, and National Union's fourth, fifth, and ninth affirmative defenses.[43]  The parties

---

[42] Viacom, NAI, and Ms. Redstone also sought coverage under Viacom's directors' and officers' liability insurance policies for the losses they have incurred or may incur in connection with the Merger Litigation.  This Court previously denied the defendant insurers' motions to dismiss those declaratory judgment actions as unripe.  *See Viacom Inc. v. U.S. Specialty Insur. Co.*, 2023 WL 2034445 (Del. Super. Feb. 16, 2023).

[43] Pls.' Op. Br. in Supp. of Mot. to Dismiss and Mot. to Strike at 13, n.7.

briefed and argued the motions on January 25, 2023, and the Court took the motions under advisement.

### E. The Parties' Contentions

The NAI Policyholders contend Defendants' counterclaims must be dismissed because the Merger Litigation constitutes a claim first made in 2019. The NAI Policyholders argue the Merger Litigation and the 2016 Actions are not Interrelated Wrongful Acts because there is no "meaningful linkage" between the two sets of claims, and the 2016 Actions are mere "background facts" in the Merger Litigation. According to the NAI Policyholders, the Court should consider the nature of the alleged Wrongful Acts, the legal theories advanced in each of the actions, the nature of the relief sought in the two groups of cases, and the alleged evidentiary bases for the claims, all of which support the conclusion that the 2016 Actions and the Merger Litigation are not based on Interrelated Wrongful Acts.

Since the claims are not interrelated, the NAI Policyholders continue, they necessarily cannot be barred under the PPL Exclusions or the Prior Notice Exclusion, both of which require the same "meaningful linkage" analysis, but which also are subject to the rule of construction requiring insurance policy exclusions to be interpreted narrowly. Therefore, the NAI Policyholders argue the Court also should strike as legally insufficient the affirmative defenses based on the Interrelated Wrongful Acts clause or the associated exclusions.

Defendants respond that, under Delaware's minimal pleading standard, they have stated a conceivable claim that coverage is precluded under either the Interrelated Wrongful Acts clause or the exclusions at issue in the motion. Defendants argue the NAI Policyholders cannot establish with reasonable certainty that Defendants are not entitled to declaratory judgment in their favor under any set of facts susceptible of proof. Dismissal, Defendants urge, would be premature, and some amount of discovery is needed before the Court can determine whether the claims are interrelated or fall within the exclusions.

Even if the Court considers the merits of the NAI Policyholders' counterclaims and affirmative defenses now, Defendants argue the Merger Litigation and the 2016 Actions are Interrelated Wrongful Acts under the plain language of the Policies. Defendants contend the Interrelated Wrongful Acts clause sweeps broadly and applies to all claims "arising out of" the Wrongful Acts at issue in the 2016 Actions, including the "series of related facts" that Defendants contend led from the 2016 Actions to the Merger. Ms. Redstone's reconstitution of the NAI and Viacom boards was, according to Defendants, the "fundamental initial step" in her alleged scheme to force a Viacom-CBS merger. Applying that same analysis, Defendants argue the PPL and Prior Notice Exclusions also bar coverage. Finally, Defendants argue their affirmative defenses should not be stricken because they are relevant to the NAI Policyholders' claims and are not prejudicial.

## ANALYSIS

Under Delaware Superior Court Civil Rule 12(b)(6), dismissal is appropriate when the complaint fails to state a claim upon which relief can be granted.[44] When the Court considers a motion to dismiss, it must: "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) [not dismiss the claim] unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[45]

Delaware's pleading standard is "minimal,"[46] but the liberal construction afforded to the complaint does not "extend to 'conclusory allegations that lack specific supporting factual allegations.'"[47] Accordingly, the Court should dismiss a complaint if the plaintiff fails to make specific allegations supporting each element of a claim or if no reasonable interpretation of the alleged facts reveals a remediable injury.[48]

Under Rule 12(f), this Court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous

---

[44] *See* Del. Super. Ct. Civ. R. 12(b)(6).

[45] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).

[46] *Id.* at 536.

[47] *Surf's Up Legacy P'rs, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at *6 (Del. Super. Jan. 13, 2021) (quoting *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998)).

[48] *Axogen Corp. v. Integra LifeSciences Corp.*, 2021 WL 5903306, at *2 (Del. Super. Dec. 13, 2021) (citing *Surf's Up Legacy P'rs, LLC*, 2021 WL 117036, at *6).

matter."[49] The standard for a motion to strike an affirmative defense as insufficient is similar to the Rule 12(b)(6) standard; when considering a motion under that rule, the Court "must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under law."[50] Motions to strike are granted "sparingly" and are not favored.[51]

**I.** **Plaintiffs' Motion to Dismiss and Strike relating to the Interrelated Wrongful Acts clause and the PPL Exclusions must be denied because it is reasonably conceivable that the 2016 Actions and 2019 Merger Litigation involve Interrelated Wrongful Acts.**

It is settled law that Delaware views insurance policies as contracts and applies established principles of contract construction to interpret those policies.[52] The scope of coverage provided by an insurance policy is prescribed by the policy language's ordinary meaning.[53] The Delaware Supreme Court has expressly rejected any "one-size-fits-all" judicial test for determining whether claims are related for purposes of resolving coverage questions.[54] Instead of a judicially crafted test, Delaware courts determine relatedness based on the language in the particular policy at issue.[55]

---

[49] Super. Ct. Civ. R. 12(f).
[50] *Nichols v. Chrysler Gp. LLC*, 2010 WL 5549048, at *5 (Del. Ch. Dec. 29, 2010).
[51] *Salem Church (Del.) Assocs. V. New Castle Co.*, 2004 WL 1087431, at *2 (Del. Ch. May 6, 2004).
[52] *See, e.g., Monzo v. Nationwide Property & Casualty Insur. Co.*, 249 A.3d 106, 118 (Del. 2021); *In re Solera Ins. Coverage Appeals*, 240 A.3d 1121, 1131 (Del. 2020).
[53] *O'Brien v. Progressive N. Insur. Co.*, 785 A.2d 281, 286-88 (Del. 2001).
[54] *First Solar, Inc. v. Nat'l Union Fire Insur. Co. of Pittsburgh, PA*, 274 A.3d 1006, 1013 (Del. 2022).
[55] *Id.* at 1013.

The parties devoted a substantial portion of their briefs to parsing the meaning of the Interrelated Wrongful Acts clause and the PPL Exclusions based on the language contained in the Policies. The NAI Policyholders argued the Court should hold that the Policies require "meaningful linkage" between claims for those actions to fall within the Interrelated Wrongful Acts clause or the PPL Exclusions. That "meaningful linkage" analysis was used by this Court in two relatively recent decisions based on the language and phrasal verbs contained in the policies at issue in those cases.[56] There are some differences between the policy language in those cases and the applicable language in these Policies. Whether those differences change the analysis in any substantial respect is a question that ultimately will be answered by the Court. But the question is premature because the procedural posture of this case, the standard of review, and the unusual facts alleged in the counterclaim require further development of the record before the Court may confidently apply the contractual language and determine coverage.

The NAI Policyholders' argument that the 2016 Actions and the Merger Litigation are not based on Interrelated Wrongful Acts and do not fall within the PPL Exclusion is a compelling one. There are substantial differences between the Merger Litigation, which challenges the fairness of the merger price, and the 2016 Actions,

---

[56] *Options Clearing Corp. v. U.S. Specialty Insur. Co.*, 2021 WL 5577251, at *8 (Del. Ch. Nov. 30, 2021); *Sycamore P'rs Mgmt., L.P. v. Endurance Am. Insur. Co.*, 2021 WL 4130631, at *12 (Del. Super. Sept. 10, 2021).

which questioned Sumner Redstone's capacity and challenged a variety of board governance and control decisions that were proposed or employed in and around 2016. Among other differences, the two groups of actions made different claims, sought different relief, and challenged conduct occurring in different time periods. In addition, the Court of Chancery already expressly concluded that the plaintiffs in the Merger Litigation were not bringing claims relating to the 2016 Actions, but simply "stating facts relating to those actions" to support their new claims.[57]

Defendants argue that the corporate control actions in 2016 "culminated" in the 2019 Merger, but that argument—taken to its logical conclusion—could render coverage illusory, an interpretation at odds with settled Delaware law.[58] Although the 2016 corporate control actions could in a sense be viewed as a proximate cause of the 2019 Merger, since those control decisions resulted in the boards that approved the Merger, the same arguably could be said of any corporate decision made by those boards. If any board decision is interrelated with the 2016 Actions, the NAI Policyholders effectively have no D&O coverage at all, despite paying annual premiums to Defendants for that coverage.

On the other hand, this coverage issue presently is before the Court on a motion to dismiss. Although the motion relates to Defendants' counterclaims and

---

[57] *In re Viacom*, 2020 WL 7711128, at *17 n.197.
[58] Insurance coverage provisions should be construed broadly to safeguard the insured's reasonable expectation of broad coverage. *See RSUI Indem. Co., v. Murdock*, 248 A.3d 887, 906 (Del. 2021).

affirmative defenses, the NAI Policyholders, as the insureds, have the burden of proving that a claim is covered by the Policies.[59]  In order to overcome a motion to dismiss in this context, Defendants need only plead a "reasonably conceivable set of circumstances" under which the NAI Policyholders would be unable to show that Defendants are obligated to cover the Merger Litigation under the Policies.

In addition to the "minimal" pleading standard Defendants must meet, the record does not permit a complete analysis of whether the claims are related.  As a general matter, courts in Delaware look to the relevant pleadings to determine whether actions are related for purposes of insurance coverage.[60]  But a recent Delaware Supreme Court decision, *First Solar, Inc. v. National Union Fire Insurance Company*, suggests that—at least where there is doubt as to relatedness—a court may look beyond the pleadings and consider statements an insured made that are inconsistent with its current coverage position.[61]

---

[59] *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997).

[60] *See, e.g. First Solar, Inc.*, 274 A.3d at 1014 (making a side-by-side comparison of the two complaints alleged to be related); *Options Clearing Corp.*, 2021 WL 5577251, at *10 (denying Rule 56(f) request for discovery because courts determine relatedness based on the pleadings or related formal documents); *Providence Serv. Corp. v. Ill. Union Insur. Co.*, 2019 WL 3854261, at *3 ("When determining whether actions are 'related,' courts compare the allegations in the complaints to determine their similarities and differences.").

[61] *First Solar, Inc.*, 274 A.3d at 1017 ("Finally, if there is any remaining doubt about relatedness . . . we can rely on what First Solar said about the two Actions when insurance coverage was not at issue.  First Solar agreed in another matter that the Actions were nearly identical . . . and filed a [motion in which it] argued that 'the substantial overlap in legal and factual issues and the substantial overlap in parties weigh in favor of transferring [the second action] to this Court.'").

In this case, there are two reasons the Court cannot resolve the applicability of the Interrelated Wrongful Acts clause and the PPL Exclusions on the present record. First, the complaints in the Merger Litigation were filed under seal, and the NAI Policyholders have not provided unredacted copies of the complaints to Defendants. Although Defendants concede they understand the basis of the claims pleaded in those complaints, Defendants should in fairness have access to the unredacted complaints before the Court concludes the Interrelated Wrongful Acts clause and the PPL Exclusions do not apply.

Second, Defendants' counterclaims allege the NAI Policyholders took positions inconsistent with their current coverage position when they (1) argued to the Court of Chancery that the Merger Litigation was barred by the releases granted in the 2016 settlements; and (2) sought indemnification for the Merger Litigation under the 2016 settlement agreements. Although the argument to the Court of Chancery regarding the scope of the releases ultimately was not successful, and therefore likely does not estop the NAI Policyholders' coverage claims here,[62] the indemnification claim may fall within the considerations arguably permitted by *First Solar*. Defendants therefore should be allowed limited discovery relating to those

---

[62] *See Motorola Inc. v. Amkor Tech., Inc.*, 958 A.2d 852, 859-60 (Del. 2008) (holding that judicial estoppel functions in two ways: (1) to prevent a party from attempting to establish an inconsistent or different cause of action arising out of the same occurrence, and (2) to prevent a party from "advancing an argument that contradicts a position previously taken *that the court was persuaded to accept as the basis for its ruling*." (emphasis added)).

indemnification claims before the Court considers the Interrelated Wrongful Acts clause and the PPL Exclusions.

## II. Plaintiffs' Motion to Dismiss and Strike relating to the Prior Notice Exclusion is granted because the plain language of that exclusion does not apply to the facts of this case.

Defendants also asserted counterclaims and affirmative defenses based on the Policies' Prior Notice Exclusion. The Prior Notice Exclusion applies to claims for loss relating to a Wrongful Act or Interrelated Wrongful Act that "was the subject of any notice given under any other policy of insurance" that the Policies renewed or replaced.[63] Importantly, however, the exclusion only applies if (1) the notice was given "before the Inception Date" of the Policies; and (2) coverage is afforded and accepted as a result of the notice.[64] The Policies' Inception Date was December 30, 2018.[65]

The facts Defendants pleaded in their counterclaims establish that notice under the NAI Policyholders' previous D&O insurance program was not given before the Policies' Inception Date. The "prior notice" on which Defendants rely is notice Plaintiffs allegedly gave National Union as the primary carrier in NAI's 2016

---

[63] Starr Answ. Ex. B, Management and Professional Liability Coverage Part, § III(B)(1) ("The Insurer shall not pay Loss from any Claim based upon, arising out of, directly or indirectly resulting from, on consequence of, or in any way involving any Wrongful Act or Interrelated Wrongful Act which, before the Inception Date of this Policy, was the subject of any notice given under any other policy of insurance which this Policy is a renewal or replacement, but only if coverage is afforded or accepted under such prior policy (or would have been afforded and accepted except for the exhaustion of its limits of liability) for such Loss, in whole or in part, as a result of such notice.")

[64] *Id.*

[65] *Id.,* Declarations Item 2; *id*. General Terms and Conditions, § I(U).

D&O insurance tower.[66]  That notice, however, was not sent until after Defendants denied coverage for the Merger Litigation under the Policies.[67]  The first coverage denial was not given until February 2020 at the earliest.[68]  Accordingly, even if National Union "accepted" coverage as Defendants allege,[69] that acceptance was neither based on notice given before the Inception Date nor coverage accepted "as a result of such [pre-inception date] notice."

To the extent Defendants' counterclaims seek a declaratory judgment that coverage is barred under the Prior Notice Exclusion, the plain language of the Exclusion does not apply to the facts as Defendants pleaded them, and those claims therefore must be dismissed under Rule 12(b)(6).  For the same reason, Defendants' affirmative defenses based on the Prior Notice Exclusion must be stricken as legally insufficient.[70]

## CONCLUSION

For the foregoing reasons, the NAI Policyholders' Motion to Dismiss and to Strike is GRANTED as to the counterclaims and affirmative defenses based on the

---

[66] Endurance Countercl. ¶ 76; Starr Countercl. ¶ 80; Ironshore Countercl. ¶ 80.

[67] Endurance Countercl. ¶ 76; Starr Countercl. ¶ 80; Ironshore Countercl. ¶ 80.

[68] Starr Countercl. ¶ 77.

[69] It remains unclear from the record whether the plaintiffs gave notice under the 2016 policies, or whether National Union instead unilaterally accepted coverage under the 2016 policies in response to the NAI Policyholders notice under the 2018-19 policies.  This factual issue is not relevant to the Court's decision on the motion to dismiss.

[70] *See Columbus Life Ins. Co. v. Wilmington Trust Co.*, 2021 WL 537117, at *9 (Del. Super. Feb. 15, 2021) (striking affirmative defense after dismissing related counterclaim); *James River-Pennington Inc. v. CRSS Cap., Inc.*, 1995 WL 106554, at *12 (Del. Ch. Mar. 6, 1995) (same).

Prior Notice Exclusion and DENIED as to the counterclaims and affirmative defenses based on the Interrelated Wrongful Acts clause and the PPL Exclusions.

**IT IS SO ORDERED.**