# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

GREENVILLE CENTER SC, LLC,      )
     )
        Plaintiff,      )      C.A. No. N21C-02-094-FWW
     )
        v.      )
     )
YOUR DENTISTRY TODAY, INC.,      )
     )
        Defendant.      )

Submitted: February 26, 2024
Decided: May 30, 2024

## DECISION AFTER TRIAL

Lauren A. Nehra, Esquire, GAWTHORP GREENWOOD, PC, 3711 Kennett Pike, Suite 100, Wilmington, DE 19807; Stephen R. McDonnell, Esquire (*pro hac vice*), GAWTHORP GREENWOOD, PC, 17 E. Gay Street, Suite 100, West Chester, PA 19380; Attorneys for Plaintiff Greenville Center SC, LLC.

William B. Larson, Jr., Esquire, MANNING GROSS + MASSENBURG LLP, 1007 N. Orange Street, Suite 711, Wilmington, DE 19801; Attorney for Defendant Your Dentistry Today, Inc.

**WHARTON, J.**

## I. INTRODUCTION

This case is a breach of contract matter regarding a commercial lease between Plaintiff Greenville Center SC, LLC ("Greenville") and Defendant Your Dentistry Today, Inc ("Your Dentistry"). The Court held a two-day bench trial on October 18 and October 19, 2023. In reaching this decision, the Court considers the testimony, exhibits, demeanor of the witnesses, and post-trial submissions of the parties, together with the applicable law. The Court's factual findings and legal conclusions are set forth below. In summary, the Court finds that Your Dentistry breached its Lease Agreement with Greenville. More specifically, the Court finds that Greenville met its obligations under its lease agreement with Your Dentistry to repair damages caused by a fire to the leased premises, while your Dentistry did not. As a result, Your Dentistry's termination of the lease breached its contract with Greenville. Further, the Court finds that Greenville made reasonable efforts to mitigate its damages. Accordingly, Greenville is entitled to damages under the lease agreement. Greenville shall submit a proposed Final Order setting out a full accounting of everything it claims it is due.

## II. FACTS AND PROCEDURAL CONTEXT

Greenville is a Delaware limited liability company that maintains its principal place of business at 234 North James Street, Newport, Delaware. Greenville is a subsidiary of Pettinaro Management, LLC ("Pettinaro"). Your Dentistry is a

Delaware corporation which maintains a place of business at 1815 W. 13th St., Suite 6, Wilmington, Delaware. Dr. Michael Matthias ("Dr. Matthias") is the sole owner and operator of Your Dentistry.

Greenville Center is a commercial office building located at 308 Kennett Pike, Greenville, Delaware. Greenville Center was owned by Greenville Center Associates, LLC ("Greenville Center Associates") prior to Greenville Center's sale to Greenville.

On October 22, 2013, Your Dentistry entered a Standard Office Lease ("Lease Agreement") with Greenville Center Associates.[1] The Lease Agreement was for Suite Number E-207 ("Premises") of Greenville Center to be used as a dental practice. The term of the Lease Agreement was from January 1, 2014 to March 30, 2024 ("Lease Term"), unless otherwise extended as set forth in the Lease Agreement. The Lease Agreement was first amended on April 4, 2014 ("First Amendment to the Lease Agreement").[2] The Lease Agreement and First Amendment to the Lease Agreement were also amended to provide temporary rent deferral and other accommodations due to the COVID-19 pandemic ("COVID Amendment").[3] When Greenville purchased Greenville Center, which included the Premises, from

---

[1] PX-1.
[2] PX-2.
[3] PX-3.

Greenville Center Associates the Lease Agreement and First Amendment to the Lease Agreement were assigned to Greenville.

Pettinaro acted as Greenville's agent to manage and control the day-to-day operations of the shopping center. Timothy Narvell ("Narvell") has been Pettinaro's Operations Manager since December 2018. In that position, Narvell oversees the contracts, rent, maintenance and repairs at Greenville Center.

A fire started inside the Premises on the morning of June 3, 2020. Dr. Matthias was working at the Premises when the fire started. Smoke, fire and water damage extended from the Premises to adjacent units and common areas of Greenville Center. On the same day as the fire, Pettinaro retained a contractor from Six Angels Development, LLC ("Six Angels") - Michael Miles ("Miles") - to begin the extraction and drying the water used to out the fire. Miles entered the Premises on the day of the fire and began his work. Narvell also inspected the Premises on that day.

The Lease Agreement required that both parties insure the Premises. Cincinnati Insurance Company insured Greenville. Travelers Insurance Company of America ("Travelers") insured Your Dentistry's use of the Premises from April 9, 2020 through April 9, 2021. Sometime after the fire, Dr. Matthias called Travelers to open an insurance claim. On June 4, 2020, Travelers notified Greenville to stop its remediation efforts at the Premises in order for it to investigate the origin of the

4

fire.[4]  The first joint insurers examination of the Premises was conducted on June 25, 2020.  Travelers last investigation of the Premises occurred on July 27, 2020, at which point the space was "released."  The parties have not received any official report regarding the cause of the fire.  After July 27, 2020, Miles re-initiated his efforts to repair the Premises and Dr. Matthias stopped by the Premises at least weekly to collect mail and view the property.

Six Angels also offered its contracting services to Your Dentistry, as well as Fresh Faced, Pink Turtle, and Pure Barre ("Surrounding Tenants"), but Your Dentistry rejected Six Angels' offer.  The Surrounding Tenants all accepted.  Instead, Your Dentistry hired a contractor to remove some dental equipment in October 2020.  Your Dentistry never removed certain improvements and equipment on the Premises, including walls and plumbing pumps, respectively.  Six Angels removed the remaining equipment.  Six Angels provided Pettinaro with an invoice for "Fire Damage as per final bid" that was billed on November 27, 2020.[5]  That invoice due date was December 1, 2020.

On December 2, 2020, Dr. Matthias had his secretary prepare a letter to notify Greenville that Your Dentistry was terminating the Lease Agreement ("Termination

---

[4] Compl. Ex. D, D.I. 1.
[5] PX-12.

Letter").[6]  He stopped by the Premises on that day and took photos.[7]  On December 3, 2020, Dr. Matthias delivered the Termination Letter to a secretary at Greenville's office.  Then, Dr. Matthias called and spoke to Narvell to inform him that he left the Termination Letter with the secretary and would be terminating the Lease Agreement.  Pettinaro responded to that letter on December 11, 2020.[8]

Your Dentistry hired a public adjuster for the Premises in August 2020.  In October 2020, it signed a real estate option contract for a property in Trolley Square to be used as a dental practice.  Your Dentistry received $466,655.56 from Travelers; the bulk of which was paid in December 2020 or later.  Greenville did not have knowledge of the Trolley Square option contract until sometime after Your Dentistry terminated the Lease Agreement.  In July 2021, Your Dentistry closed on that property.  In between Your Dentistry's vacating the Premises and its purchase of the property at Trolley Square, Your Dentistry operated at a temporary location in Newport.

Timothy Spencer ("Spencer") is the Director of Retail Leasing for Pettinaro.  In that role, Spencer was responsible for re-leasing the Premises.  A surrender of possession agreement was executed as of April 21, 2021.[9]  On or about May 17,

---

[6] PX-9.
[7] PX-22.
[8] PX-10.
[9] PX-13.

2021, Spencer first advertised the Premises on both Pettinaro's website and a website called Buildout. Pettinaro also sent "email blasts" which included an advertisement of the Premises. Between July 21, 2021 and July 26, 2022, Spencer made twenty-eight "cold calls" to re-lease the Premises, all unsuccessful.

Greenville filed its Complaint on February 10, 2021.[10] Your Dentistry answered on March 26, 2024.[11] Your Dentistry filed an Amended Answer and Counterclaim on April 15, 2021.[12] The counterclaim alleges that Greenville failed to mitigate its damages. Greenville answered Your Dentistry's counterclaim on May 5, 2021.[13]

The Court held a two-day bench trial on October 18 and October 19, 2023. Greenville's witnesses included Narvell and Spencer. Your Dentistry's only witness was Dr. Matthias. Notably, Miles was not called as a witness at trial. Twenty-two exhibits were introduced at trial. Greenville submitted its Post-Trial Opening Brief on January 15, 2024.[14] Your Dentistry submitted its Post-Trial Brief on February 14, 2024.[15] Greenville filed its Post-Trial Reply Brief on February 26, 2024.[16]

---

[10] D.I. 1.
[11] D.I. 6.
[12] D.I. 7.
[13] D.I. 8.
[14] D.I. 73.
[15] D.I. 74.
[16] D.I. 75.

## III. THE PARTIES' CONTENTIONS

Greenville asserts a breach of contract.[17]  It contends that there is no dispute that the Lease Agreement is a valid and binding contract between the parties to this case.[18]  Greenville argues that Your Dentistry breached the express terms of the Lease Agreement, including: (1) failing to pay rent, expenses, and other fees and interest that are due and continue under Paragraphs 1, 1.5, 1.6, 1.11, 4, 9.6, 13.2, 13.4, 13.5, and 31 of the Lease Agreement; (2) failing to cooperate with Greenville and its agents to repair and restore the Premises, contra to  Paragraph 9.5(c) of the Lease Agreement; and (3) failing to notify Greenville of the specific basis of its termination (i.e., what work allegedly was not completed within six months) and failing to provide an opportunity to cure, contra to Paragraph 13.3 of the Lease Agreement.[19]  Greenville also argues that Your Dentistry breached the implied covenant of good faith and fair dealing.[20]  It asserts that Your Dentistry has failed to prove that it had a valid justification for attempting to terminate the Lease Agreement.[21]  Lastly, Greenville argues that it suffered damages on account of Your

---

[17] Pl.'s Compl. at 15, D.I. 1.
[18] Pl.'s Post-Trial Op. Br. at 17, D.I. 73.
[19] *Id.* at 18.
[20] *Id.*
[21] *Id.* at 23.

8

Dentistry's breach of the Lease Agreement,[22] and that it has made the reasonable efforts required to mitigate its damages.[23]

The Court takes Your Dentistry's Amended Answer and Counterclaim to include the affirmative defense that Greenville had a duty to mitigate its damages.[24] Your Dentistry's main argument appears to be that Greenville breached the Lease Agreement between the parties when it failed to make required repairs in the Premises within six months of the June 3, 2020 fire.[25] Your Dentistry agrees that the amended lease, originally entered into on October 22, 2013, created a valid contract between the parties.[26] It argues that: (1) the Lease Agreement required Greenville to fix the damages in the Premises and return it to "vanilla shell" condition by December 3, 2020;[27] (2) Greenville breached Paragraph 9.5(b) of the Lease Agreement and did not return the unit to "vanilla shell" condition;[28] and (3) Your Dentistry's termination did not breach the Lease Agreement.[29] Additionally, Your Dentistry argues that Greenville failed to take reasonable efforts to mitigate its damages.[30] Further, Your Dentistry contends that: (1) Greenville's argument that

---

[22] *Id.* at 27.
[23] *Id.* at 28.
[24] Def.'s Ans. and Counterclaim at 17-18, D.I. 8.
[25] Def.'s Post-Trial Br. at 13, D.I. 74.
[26] *Id.*
[27] *Id.*
[28] *Id.* at 14.
[29] *Id.* at 19.
[30] *Id.* at 20.

9

Your Dentistry breached the covenant of good faith and fair dealing has no merit;[31] and (2) Greenville consistently mischaracterizes the facts as they relate to Your Dentistry's insurance claim and purchase of a new office location.[32] Lastly, Your Dentistry asserts that it is entitled to attorney's fees pursuant to Paragraph 31 of the Lease Agreement.[33]

Greenville replies that despite Your Dentistry's post-trial narrative, the evidence reveals that the repairs were completed within 6 months of the fire.[34] Greenville argues that evidence and common sense refute Your Dentistry's assertion that it wanted to stay in the Premises, arguing:[35] (1) Your Dentistry's supposed lack of money/insurance proceeds is an insufficient excuse;[36] and (2) Your Dentistry's lack of cooperation with Greenville is unexplainable and inexcusable.[37] Greenville also replies that it has made reasonable efforts to attempt to mitigate its damages.[38]

## IV.   STANDARD OF REVIEW

In a bench trial, "the Court is the factfinder, and the plaintiff must prove each claim by a preponderance of the evidence. A preponderance of the evidence exists

---

[31] *Id.* at 26.
[32] *Id.* at 28.
[33] *Id.* at 30.
[34] Pl.'s Post-Trial Reply Br. at 2, D.I. 75.
[35] *Id.* at 9.
[36] *Id*.
[37] *Id*. at 11.
[38] *Id*. at 14.

upon 'the side to which the greater weight of the evidence is found.'"[39] "Because the Court is the finder of fact, it is up to the Court to weigh the credibility of witnesses and resolve conflicts in witness testimony."[40]

In addition to resolving the facts in dispute, the Court also must parse the contractual relationship between the parties. It is undisputed that contract interpretation is a question of law.[41] When interpreting a contract, a court looks within the four corners of the contract[42] and construes it as a whole so as to give full effect to all provisions.[43] Delaware courts attempt to ascertain the parties' objectively manifested intent by looking to the plain language of the agreement.[44]

The Court applies certain general rules in interpreting a contract. A contract is not rendered ambiguous merely when the contracting parties disagree as to a provision's meaning.[45] A contract is ambiguous only when the provision at issue is

---

[39] *Patel v. Patel*, 2009 WL 427977, at *3 (Del. Super. Feb. 20, 2009) (quoting *Reynolds v. Reynolds*, 237 A.2d 708, 711 (Del. 1967)).

[40] *Masterson-Carr v. Anethesia Servs., P.A.*, 2015 WL 5168557, at *3 (Del. Super. Aug. 28, 2015).

[41] *Motorola, Inc. v. Amkor Tech., Inc.*, 958 A.2d 852, 859 (Del. 2008).

[42] *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 547 (Del. Super. 2005); see also *E.I. duPont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. Super. 1997).

[43] *E.I. duPont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985).

[44] *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992); see also *Seaford Golf and Country Club v. E.I. duPont de Nemours and Co.*, 925 A.2d 1255, 1260 (Del. 2007).

[45] *Rhone-Poulenc*, 616 A.2d at 1196.

11

reasonably or fairly susceptible to different interpretations.[46] The Court will consider the agreement as a whole. It will not interpret a contract in such a way as to render any of its provisions illusory or meaningless,[47] nor should any section be taken in isolation.[48] Specific provisions of a contract control over more general provisions, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one.[49] Ultimately, the Court looks not to what the parties to the contract intended a provision to mean, but rather what a reasonable person in the parties' position would have thought it to mean.[50]

## V.    DISCUSSION

Greenville's Complaint alleges a single claim for breach of contract.[51] There are three elements to a breach of contract claim: (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) resulting damage to the plaintiff.[52] There is no dispute between the parties that there was a valid lease contract. Nor is there any dispute that Your Dentistry ceased paying rent after the fire. Rather, the

---

[46] *Id.*

[47] *Osborn ex rel. Osborn v. Kemp,* 991 A.2d 1153, 1159 (Del. 2010) (quoting *Sonitrol Holding Co. v. Marceau Investissements,* 607 A.2d 1177, 1183, (Del. 1992)).

[48] *O'Brien v. Progressive N. Ins. Co.,* 785 A.2d 281, 287 (Del. 2001).

[49] *DCV Holdings, Inc. v. ConAgra, Inc.,* 889 A.2d 954, 961 (Del. 2005).

[50] *Rhone-Poulenc,* 616 A.2d at 1196; see also *AT&T Corp.,* 953 A.2d at 253.

[51] D.I. 1.

[52] *Humanigen, Inc. v. Savant Neglected Diseases*, LLC, 238 A.3d 194, 202 (Del. Super. Ct. 2020) (quotations omitted).

crux of the dispute is whether Your Dentistry was excused from paying rent due to Greenville's failure to repair and restore the Premises in a timely fashion. "A party is excused from performance under a contract if the other party is in material breach thereof."[53]

> **A.** **The Lease Agreement is a Valid and Binding Contract That Created Contractual Obligations on Both Parties.**

Your Dentistry entered into the Lease Agreement with Greenville Center Associates. The Lease Agreement was assigned to Greenville upon its acquisition of Greenville Center. Neither party disputes the validity of the Lease Agreement. Therefore, both parties are bound by their respective contractual obligations under it.

> **B.** **Your Dentistry Breached Its Contractual Obligations.**

The Court finds that Your Dentistry breached its contractual obligations to: (1) pay rent, expenses, interest, and fees; and (2) cooperate with Greenville in the restoration of the Premises. The Court does not find, as Greenville alleges, that Your Dentistry failed to give notice to Greenville of its alleged default in not finishing the work by December 3, 2020 and provide it with an opportunity to cure the claimed default. Giving notice and providing an opportunity to cure are not required in order to terminate the lease under the operative paragraph – Paragraph 9.5(b).

---

[53] *Moore Business Forms, Inc. v. Cordant Holdings Corp.,* 1998 WL 71836, at *8 & n. 35 (Del. Ch. Feb. 6, 1998, *rev.* Mar. 5, 1998).

### 1. Your Dentistry Failed to Pay Rent, Expenses, Interest, and Fees.

Greenville correctly asserts that Your Dentistry breached its contractual obligations requiring payment of rent, expenses and other fees and interest. These contractual obligations include Paragraph 1 (including 1.5, 1.6, 1.11), Paragraph 4, Paragraph 9.6, Paragraph 13.2, Paragraph 13.4, Paragraph 13.5, and Paragraph 31 of the Lease Agreement. The Lease Ledger[54] charges reflect these Lease Agreement terms. The Lease Ledger indicates that Your Dentistry failed to pay rent, expenses, interest and other fees after June 1, 2020 through March 30, 2024.[55] Although Your Dentistry does not dispute that it stopped paying rent, it maintains that it was excused from doing so because Greenville did not meet its repair and restoration obligations. Because the Court finds that Your Dentistry's default was not excused by any contractual breach by Greenville, as explained below, it concludes that, Your Dentistry breached its financial obligations under the Lease Agreement.

### 2. Your Dentistry Failed to Cooperate in the Restoration of the Premises.

Although Paragraph 9.2(a) imposes an obligation on Greenville to return the Premises to its pre-fire condition, it exempts repairs for damages to Your Dentistry's fixtures, equipment, and other improvements paid for by Your Dentistry from that

---

[54] PX-14
[55] PX-4.

obligation. Paragraph 9.5(c) requires Your Dentistry to "cooperate with landlord in connection with any such restoration and repair, including but not limited to the approval or execution of plans and specifications if required." Thus, to the extent that its fixtures, equipment, and other improvements were damaged, Your Dentistry had a duty to cooperate with Greenville with respect to those items so as to not impede Greenville's efforts to return the Premises to its pre-fire condition. Your Dentistry failed to meet this obligation to cooperate. Specifically, Your Dentistry did not remove its equipment until October, declining Six Angels' offer to assist. Even then, it did not remove all of its equipment causing Greenville to pay Miles to remove it, thereby delaying Greenville in completing its work.

3. **Your Dentistry Was Not Required to Notify Greenville of Its Alleged Default and Provide It with an Opportunity to Cure the Claimed Default.**

Greenville relies on Paragraph 13.3 to claim that it was entitled to receive notice from Your Dentistry of any claimed deficiencies in its efforts to restore the Premises, and further, that it was allowed 30 days to cure any such deficiencies. In fact, Paragraph 13.3 does state:

> Landlord shall not be in default unless Landlord fails to perform obligations of Landlord within a reasonable time, but in no event later that thirty (30) days after written notice by Tennant to landlord…specifying wherein Landlord has failed to perform such obligation.

15

This notice and opportunity to cure provision appears to conflict with Paragraph 9.5(b) which deals specifically with situations where the landlord has failed to complete repairs or restorations within six months. That paragraph allows the Tennant to terminate the lease at any time prior to the commencement or completion, respectively, of the repair or restoration, effective the date the Tennant provides notice to the Landlord. Longstanding rules of contract construction dictate that specific language controls over more general language.[56] Here the specific language of Paragraph 9.5(b) permits immediate termination of the lease, effective upon notice for failure to complete repairs or restoration.

### C. Greenville Complied With Its Contractual Obligations Under Paragraph 9.2(a).

#### 1. Greenville Was Contractually Obligated to Repair the Premises Pursuant to Paragraph 9.2(a) of the Lease Agreement.

Paragraph 9.2(a) of the Lease Agreement includes the following text:

> 9.2 Premises Damage; Premises Building Partial Damage.
>
> (a) Insured Loss: Subject to the provisions of paragraphs 9.4 and 9.5, if at any time during the term of this Lease there is an Insured Loss and that falls into the classification of either Premises Damage or Premises Building Partial Damage and that does not fall into the classification of Premises Building Total Destruction or Project Total Destruction, then Landlord shall, as soon as

---

[56] *DCV Hlgds., Inc. v. ConAgra, Inc.,* 889 A.2d 954, 961 (Del. 2005).

reasonably possible and to the extent the required materials and labor are readily available through usual commercial channels, at Landlord's expense, repair such damage (but not Tenant's fixtures, equipment or tenant improvements originally paid for by Tenant) to its condition existing at the time of the damage, and this Lease shall continue in full force and effect.

Under Paragraph 9.1(e), "Insured Loss" is defined as "damage or destruction caused by an event required to be covered by the insurance described in [P]aragraph 8." Both parties to this case were insured at the time of the fire under types of insurance covered under Paragraph 8. Your Dentistry was insured under the Paragraph 8.3 definition of "Property Insurance - Tenant" by Travelers. Greenville was insured under the Paragraph 8.4 definition of "Property Insurance - Landlord" by Cincinnati Insurance Company. Under Paragraphs 8 and 9.1(e) of the Lease Agreement, the damage from the fire is an "Insured Loss."

Paragraph 9.2(a) contains the proviso that it is subject to Paragraphs 9.4 and 9.5. Paragraph 9.4 deals with damage near the end of the lease and is inapplicable here. Paragraph 9.5 does have applicability, however. It provides:

9.5 Abatement of Rent; Tenant's Remedies.

(b) If Landlord shall be obligated to repair or restore the premises or the Building under the provisions of this paragraph 9 and not commence such repair or restoration within ninety (90) days after such occurrence, or if Landlord shall not complete the restoration and repair within six (6) months after such occurrence, Tenant may at

17

Tenant's option cancel and terminate this Lease by giving Landlord written notice of Tenant's election to do so at any time prior to the commencement or completion, respectively, of such repair or restoration. In such event, this Lease shall terminate as of the date of such notice.

Thus, Greenville was contractually required to return the Premises to Your Dentistry in its pre-fire condition within six months after the fire.[57] As explained

---

[57] Your Dentistry insists that Greenville was obligated to return the Premises in "vanilla shell" condition. Def.'s Post-Trial Br., at 13-19, D.I. 74. Although Dr. Mathias understood that the Premises were to be restored "[e]nough so that [he] could take over and do whatever [he] would need to do to get it functioning as a dental office." Trial Tr. Oct. 19, 2023, at 22:9-15; 75:21-76:15. Greenville uses the "vanilla Shell" term as well. Pl.'s Post-Trial Op. Br., at 4, D.I. 73. The Lease Agreement does not define "vanilla shell" condition and the term only appears in Paragraph 1.15.1, which reads:

> 1. Basic Lease Provisions
>    …
> 1.15 Landlord Alterations, Improvements or Additions:
>
> 1.15.1 Landlord shall demolish certain existing improvements in the Premises in order to deliver the Premises to Tenant in "vanilla shell" condition[.] … Landlord shall have no obligation to perform any improvements to the Premises to prepare the same for Tenant's occupancy, and Tenant acknowledges that Tenant has inspected the Premises and accepts the same in its "as-is" condition, without any representation or warranty by Landlord, express or implied.
>
> 1.15.2 Tenant shall perform, at its sole cost and expense, all other initial improvements to the Premises[.]

below, the Court determines that Greenville complied with its obligations under Paragraphs 9.2(a) and 9.5(b) and that Your Dentistry's purported cancellation of the lease pursuant to Paragraph 9.5(b) was unjustified.

### 2.     Allegedly Incomplete Repairs

Your Dentistry excuses its financial breach, although not the breach of its duty to cooperate, on the basis that the repairs were incomplete. Your Dentistry is ill-positioned to make that argument. Not only did it fail to remove its fixtures and equipment in a timely fashion, making Greenville's task of repairing and restoring the Premises more difficult, but its insurer, Travelers, halted Greenville's remediation efforts on June 4, 2020. The Premises were not released to Greenville to continue its repairs until Travelers' last inspection on July 27th. That period represents nearly a third of Greenville's six months repair window. Although Your Dentistry, through its insurer Travelers, is not responsible to that entire period, it certainly is responsible for a sizeable portion of it.

In its post-trial brief, Your Dentistry asserts that the photographs in PX-22 depict the following areas it contends were not repaired within six months of the

Compare Greenville's repair obligation under Paragraph 9.2(a). That obligation is to return the Property "to its condition at the time of the damage." The term "vanilla shell" condition applies to Greenville's delivery of the Premises at the inception of the lease, not after the Premises has been damaged. Perhaps, there is merely a semantical distinction without a difference in the language, but in deference to Paragraph 9.5(a), the Court views Greenville's obligation to be to return the Premises to Your Dentistry in "its condition existing at the time of the damage."

19

fire: (1) exposed insulation; (2) exposed piping throughout; (3) missing drywall on several walls; (4) discoloration due to smoke on several walls; and (5) an overarching smoke-like smell.[58] The seven photographs in PX-22 actually depict a single area of the Premises at various angles. In that location, the photographs depict: (1) an area of uninstalled plywood where pipes and insulation are exposed; and (2) an exit door showing missing framing and drywall with an area of discolored drywall running perpendicular to the door. In his cross-examination at trial, Dr. Mathias testified that, beyond the photographs in PX-22, he did not know whether or what Greenville[59] may not have finished.[60] The Court addresses each area in turn and is unpersuaded that they provide a basis for Your Dentistry to terminate the lease. Stated another way, the Court concludes that Greenville completed the repairs it was obliged to complete in a timely fashion.

### a. Uninstalled or Missing Plywood

Your Dentistry argues that several sheets of plywood were not installed in the Premises as of November 27, 2020. The record shows that plywood was not installed in a single area, but instead it was left on the floor of the Premises to prepare for an electrical inspection after Your Dentistry's contractor had completed its work. Had the plywood been installed before December 2, 2020, it would have needed to

---

[58] Def.'s Post-Trial Br., at 15-16, D.I. 74.
[59] Referred to at trial as Pettinaro.
[60] Trial Tr. Oct. 19, 2023, at 80:19-23.

be taken down in order to access the electrical outlet for inspections. The Court does not consider the uninstalled plywood to constitute a breach of Greenville's repair and restoration obligations.

### b. Missing Drywall Adjacent to the Partition in the Utility Closet

The area for the drywall in question was adjacent to the partition wall in the utility closet. There was no drywall there at the time of original delivery. Greenville did not replace any drywall in this area. After the initial delivery, Your Dentistry added drywall there. As an improvement, this drywall is not covered under 9.2(a).

### c. Discolored Drywall and Missing Door Casing Adjacent to the Rear Door of the Premises

Dr. Mathias understood that that Your Dentistry was responsible for re-painting the drywall that had been damaged throughout the premises as well as replacing custom "trim" around a door.[61] He stated at trial that after the Premises was originally delivered, Your Dentistry had the drywall painted and had door casing attached to the doorway. The discoloration and missing door casing are improvements, exempt from Greenville's contractual obligations under Paragraph 9.2(a).

### d. "Dank" and "Smoky" Odor

---

[61] *Id.* at 79:2-80:1.

Your Dentistry complains that the Premises were left with an overarching smoke-like smell. Greenville disputes that there was such a smell. Because some of Your Dentistry's smoke and water damaged improvements, which it was responsible for removing, were not removed, the Court is unable to determine the source of the odor, if, in fact, it remained, and assign responsibility for its presence. Certainly, Your Dentistry has not established it as a legitimate basis to terminate the lease.

### D.     Mitigation of Damages

In *Dover Mall, LLC v. Tang*,[62] this Court expressed a landlord's duty to mitigate under similar circumstances, writing:

> Under Delaware law, a plaintiff has the duty to mitigate his or her damages when feasible. This general rule requires parties to avoid unreasonable costs that they could have avoided through reasonable efforts. In the context of a commercial lease, a landlord's duty to mitigate requires it to take reasonable efforts to relet the property unless the parties expressed a clear intent to release that duty through contract. Typically, the defendant bears the burden to prove this affirmative defense.[63]

Greenville suffered damages as Your Dentistry failed to pay the aforementioned rent, expenses and other fees/interest. Given the language of *Dover Mall, LLC*, Greenville has a duty to mitigate its damages.

---

[62] 2023 WL 6536975 (Del. Super. Ct. Oct. 5, 2023), amended, 2023 WL 7903639 (Del. Super. Ct. Nov. 16, 2023).
[63] *Id*. at *6 (citations omitted).

In its Amended Answer, Your Dentistry counterclaimed, alleging that Greenville had failed to mitigated its damages.[64] According to Timothy Spencer, Pettinaro's retail leasing director, who was tasked with the effort to re-lease the Premises, Greenville began efforts to re-lease the Premises and mitigate its damages after the Surrender of Possession Agreement of April 21, 2021 was executed.[65] Spencer listed the Premises on a commercial real estate listing site and on Pettinaro's own real estate listing site.[66] Spencer also made "cold calls" in an effort to find a replacement tenant, beginning on July 21, 2021, focusing on dental offices because the "fit-out of the space was conducive for a dental office."[67] Those efforts, through cold calls and emails, extended through August 8, 2022.[68] After that, the Premises continued to be listed on both the commercial real estate listing site and Pettinaro's listing site.[69] In sum, Spencer testified that his efforts to re-lease the Premises were typical of the efforts he undertakes for any retail property in the Pettinaro portfolio, and in some respects, were over and above his typical efforts.[70]

The Court finds these efforts to be reasonable efforts by Greenville to mitigate its damages. The fact that they were unsuccessful does not mean that the efforts

---

[64] D.I. 7.
[65] Trial Tr. Oct. 18, 2023, at 162:1-5.
[66] *Id.* at 162:11-163:14.
[67] *Id.* at 163:21-23; 164:17-23; 165:14-17.
[68] PX-15.
[69] Trial Tr. Oct. 18, 2023, at 171:1-5.
[70] *Id.* at 188:22-189:1-11.

were unreasonable. Your Dentistry did not present any commercial real estate witness to dispute the reasonableness of Spencer's efforts. Accordingly, Your Dentistry has not met its burden of proving that Greenville failed to take reasonable steps to mitigate its damages. Therefore, the Court finds against Your Dentistry and for Greenville on Your Dentistry's counterclaim.

### E. Damages

In its Complaint, Greenville seeks damages "in the amount of $175,328.61 plus reasonable attorneys' fees and such other relief as the Court deems just and equitable."[71] Paragraph 13.2 of the Lease Agreement permits Greenville to recover damages, including unpaid rent for the balance of the term, and reasonable attorneys' fees for any material default by Your Dentistry. In the event of a lawsuit, Paragraph 31 of the Lease Agreement entitles the prevailing party to be fully reimbursed for all reasonable attorneys' fees.

Because some damages, such as late fees, interest and attorneys' fees either continue to accrue or have not been presented to the Court, the Court directs Greenville to submit a proposed Final Order no later than 15 days from the date of this Opinion. Your Dentistry shall have 15 days from the date of Greenville's submission to respond.

---

[71] D.I. 1.

24

## VI.   CONCLUSION

The Court finds for Plaintiff Greenville Center SC, LLC and against Defendant Your Dentistry Today, Inc. on Plaintiffs Complaint for breach of contract. The Court further finds against Your Dentistry Today, Inc. and for Greenville Center SC, LLC on Your Dentistry Today, Inc.'s Counterclaim.

The Court will determine the amount of damages for unpaid rent, late fees, interest, and reasonable attorneys' fees after considering Plaintiff Greenville Center SC, LLC's proposed Final Order and Defendant Your Dentistry Today, Inc.'s Response.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.